# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

Horror, Inc., a Massachusetts
corporation, and The Manny
Company, a Connecticut Limited
Partnership,

          Plaintiffs,

vs.

Victor Miller, an individual; and
DOES 1 through 10,

          Defendants.

Case No.: No. 3:16-cv-01442-SRU

## **ANSWER AND COUNTERCLAIM**

Victor Miller, and individual

          Counterclaimant,

vs.

Horror, Inc., a Massachusetts
corporation, The Manny Company, a
Connecticut Limited Partnership;
and Does 1 through 10,

          Counterclaim Defendants.

November 17, 2016

## PRELIMINARY STATEMENT

1.      Defendant Victor Miller ("Defendant" or "Miller") admits Paragraph 1, solely to the extent that plaintiff Horror, Inc. ("Horror") seeks the declaration stated, but otherwise denies the allegations contained in Paragraph 1.

2.      Paragraph 2 contains conclusions of law as to which no responsive pleading is required.  To the extent Paragraph 2 contains factual allegations, defendant Miller only admits that Sean Cunningham ("Cunningham"), in 1979, inspired by the then-recent success of the horror film *Halloween* (1978), wanted to make a horror film with Miller with whom he had previously worked; that Miller promptly wrote a film treatment and then a first draft screenplay for a horror film, both originally entitled "The Long Night at Camp Blood," and was thereafter presented by Cunningham with a screenplay agreement which Miller signed.  Miller otherwise denies the allegations in Paragraph 2.

3.      Paragraph 3 contains conclusions of law as to which no responsive pleading is required. Defendant admits that the film *Friday the 13th* (the "Film") was released in 1980 and was a hit which spawned many sequel films. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in the remainder of Paragraph 3 and on that basis denies the same

4.      Paragraph 4 contains conclusions of law as to which no responsive pleading is required. To the extent Paragraph 4 contains factual allegations, Defendant denies them.

5.      Paragraph 5 contains conclusions of law as to which no responsive pleading is required. To the extent Paragraph 5 contains factual allegations, Defendant denies them.

6.      Paragraph 6 contains conclusions of law as to which no responsive pleading is required. To the extent paragraph 6 contains factual allegations, Defendant denies them.

## JURISDICTION AND VENUE

7.      Paragraph 7 contains conclusions of law as to which no responsive pleading is required.

8.      Paragraph 8 contains conclusions of law as to which no responsive pleading is required.

## THE PARTIES

9.      Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 9 and on that basis denies the same.

10.      Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 10 and on that basis denies the same.

11.      Defendant admits only that he is an individual, that he was once a citizen and resident of Connecticut, but that he is currently and has been since 2001 a citizen and resident of the state of California, but Defendant otherwise denies the allegations in Paragraph 11.

12.      Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 12 and on that basis denies the same.

13.      Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 13 and on that basis denies the same.

## FACTS COMMON TO ALL COUNTS

14.      Paragraph 14 contains conclusions of law as to which no responsive pleading is required. To the extent Paragraph 14 contains factual allegations, Miller admits only that he wrote the screenplays for *Here Come the Tigers* and *Manny's Orphans*, and that Cunningham received a producer credit on both films, but Miller otherwise denies the allegations of Paragraph 14 and/or lacks knowledge or information sufficient to form a belief as to the truth of

those allegations and on that basis denies the same.

15.    Miller admits only that the horror film *Halloween* (released in 1978) was a box office success and that its success apparently prompted Cunningham to want to produce a horror film, that Cunningham and Miller had worked on two prior films together, but otherwise denies the allegations contained in Paragraph 15 and/or lacks knowledge or information sufficient to form a belief as to the truth of those allegations and on that basis denies the same.

16.     Paragraph 16 contains conclusions of law as to which no responsive pleading is required. To the extent Paragraph 16 contains factual allegations, Miller admits only that on or about June 4, 1979 he signed a screenplay agreement with Manny ("Screenplay Agreement"), and Miller refers the parties and the Court to the Screenplay Agreement as to its true contents, but otherwise denies the allegations contained in Paragraph 16.

17.    Miller admits that he wrote the screenplay for the Film ("Screenplay") in Connecticut, that the Screenplay Agreement was entered into and executed in Connecticut, that he was a resident of Connecticut at the time of its execution, and that a copy of the Screenplay Agreement is attached as "Exhibit 1" to Plaintiffs' complaint, but otherwise lacks knowledge or information sufficient to form a belief as to the truth of the other allegations in Paragraph 17 and on that basis denies the same.

18.    Paragraph 18 contains conclusions of law to which no responsive pleading is required. To the extent paragraph 18 contains factual allegations, as to those allegations regarding the contents of the Screenplay Agreement Miller refers the Court and parties to the Screenplay Agreement itself, and Miller otherwise denies the allegations in Paragraph 18.

19.    Miller admits only that he and Cunningham naturally discussed ideas for the Film, but otherwise denies all allegations in paragraph 19.

20.    Miller denies that Cunningham placed an ad in *Daily Variety* for *Friday the 13th*, before a draft of the Screenplay had been completed by Miller.  Miller lacks knowledge or information sufficient to form a belief as to the truth of the other allegations contained in Paragraph 20 and on that basis denies the same.

21.    Paragraph 21 contains conclusions of law as to which no responsive pleading is required. To the extent Paragraph 21 contains factual allegations, Miller denies them.

22.    Miller denies that Cunningham placed an ad in *Daily Variety* for *Friday the 13th*, before a draft of the Screenplay was completed by Miller.  Miller lacks knowledge or information sufficient to form a belief as to the truth of the other allegations contained in Paragraph 22 and on that basis denies the same.

23.    Miller admits only that the Film began pre-production in or about August 1979 and that principal photography occurred in or about October 1979, but denies all other allegations in Paragraph 23.

24.     Miller lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 24 and on that basis denies the same.

25.    Miller admits the allegations in paragraph 25, but lacks knowledge or information sufficient to form a belief as to the truth of the allegation that the Film's success was "unprecedented" and on that basis denies the same.

26.    Paragraph 26 contains conclusions of law to which no responsive pleading is required. Miller lacks knowledge or information sufficient to form a belief as to the truth of the factual allegations contained in Paragraph 26 and on that basis denies the same.

27.    Paragraph 27 contains conclusions of law to which no responsive pleading is required. Miller lacks knowledge or information sufficient to form a belief as to the truth of the

factual allegations contained in Paragraph 27 and on that basis denies the same.

28.    Paragraph 28 contains conclusions of law to which no responsive pleading is required. To the extent Paragraph 28 contains factual allegations, Miller admits that on January 26, 2016 he issued notices of termination regarding his Screenplay under 17 U.S.C. § 203(a) directed to the Manny Company and several successors-in-interest. Miller also admits that on June 27, 2016 he issued that notice of termination to include Horror with an effective date of termination date of July 1, 2018. Miller further admits that on July 14, 2016 he re-served the notice of termination, modifying some of the recipients' addresses, with an effective termination date of July 15, 2018.  The three termination notices are referred to collectively herein as the "Termination Notices." Miller denies all other allegations in Paragraph 28.

29.    Paragraph 29 contains conclusions of law to which no responsive pleading is required. To the extent Paragraph 29 contains any factual allegations, Miller denies them.

30.    Paragraph 30 contains conclusions of law to which no responsive pleading is required. To the extent Paragraph 30 contains any factual allegations, Miller admits that Horror and Manny dispute herein the validity of the Termination Notices, but denies all other allegations in Paragraph 30.

31.    Paragraph 31 contains conclusions of law to which no responsive pleading is required. To the extent Paragraph 31 contains any factual allegations, Miller denies them.

## CAUSES OF ACTION

## COUNT I – DECLARATORY JUDGMENT

(By All Plaintiffs Against All Defendants)

32.     Defendant re-alleges and incorporates by reference his responses to Paragraphs 1-31, inclusive.

33.    Miller admits only that Plaintiffs seek declarations from the court, but otherwise denies the allegations contained in Paragraph 33.

34.    Miller admits only that Plaintiffs seek declarations from the court, but otherwise denies the allegations contained in Paragraph 34.

## COUNT II – BREACH OF CONTRACT

(By Plaintiff Manny Company Against Defendant Miller)

35.    Defendant re-alleges and incorporates by reference his response to Paragraphs 1-34, inclusive.

36.    Paragraph 36 contains conclusions of law to which no responsive pleading is required. To the extent Paragraph 36 contains any factual allegations, Miller denies them.

37.    Paragraph 37 contains conclusions of law to which no responsive pleading is required. To the extent Paragraph 37 contains any factual allegations, Miller denies them.

38.    Paragraph 38 contains conclusions of law to which no responsive pleading is required. To the extent Paragraph 38 contains any factual allegations, Miller denies them.

39.    Paragraph 39 contains conclusions of law to which no responsive pleading is required. To the extent Paragraph 39 contains any factual allegations, Miller denies them.

40.    Paragraph 40 contains conclusions of law to which no responsive pleading is required. To the extent Paragraph 40 contains any factual allegations, Miller denies them.

41.    Paragraph 41 contains conclusions of law to which no responsive pleading is required. To the extent Paragraph 41 contains any factual allegations, Miller denies them.

42.    Paragraph 42 contains conclusions of law to which no responsive pleading is required. To the extent Paragraph 42 contains any factual allegations, Miller denies them.

## COUNT III – SLANDER OF TITLE

(By Plaintiff Horror, Inc. Against All Defendants)

43.    Defendant re-alleges and incorporates by reference his responses to Paragraphs 1-42, inclusive.

44.    Paragraph 44 contains conclusions of law to which no responsive pleading is required. To the extent Paragraph 44 contains any factual allegations, Miller denies them.

45.    Paragraph 45 contains conclusions of law to which no responsive pleading is required. To the extent Paragraph 45 contains any factual allegations, Miller denies them.

46.    Paragraph 46 contains conclusions of law to which no responsive pleading is required. To the extent Paragraph 46 contains any factual allegations, Miller denies them.

47.    Paragraph 47 contains conclusions of law to which no responsive pleading is required. To the extent Paragraph 47 contains any factual allegations, Miller denies them.

48.    Paragraph 48 contains conclusions of law to which no responsive pleading is required. To the extent Paragraph 48 contains any factual allegations, Miller denies them.

## COUNT IV – CONNECTICUT UNFAIR TRADE PRACTICES ACT

(By Plaintiff Horror, Inc. against All Defendants)

49.    Defendant re-alleges and incorporates by reference his responses to Paragraphs 1-48, inclusive.

50.    Paragraph 50 contains conclusions of law to which no responsive pleading is required. To the extent Paragraph 50 contains any factual allegations, Miller denies them.

51.    Paragraph 51 contains conclusions of law to which no responsive pleading is required. To the extent Paragraph 51 contains any factual allegations, Miller denies them.

52.    Paragraph 52 contains conclusions of law to which no responsive pleading is

required. To the extent Paragraph 52 contains any factual allegations, Miller denies them.

53.    Paragraph 53 contains conclusions of law to which no responsive pleading is required. To the extent Paragraph 53 contains any factual allegations, Miller denies them.

54.    Paragraph 54 contains conclusions of law to which no responsive pleading is required.

**PRAYER FOR RELIEF**

1.    With respect to the relief requested in paragraph 1 of the Prayer for Relief, Plaintiffs specifically and generally deny that Counterclaimant is entitled to any of the relief requested in said paragraph.

2.    With respect to the relief requested in paragraph 2 of the Prayer for Relief, Plaintiffs specifically and generally deny that Counterclaimant is entitled to any of the relief requested in said paragraph.

3.    With respect to the relief requested in paragraph 3 of the Prayer for Relief, Plaintiffs specifically and generally deny that Counterclaimant is entitled to any of the relief requested in said paragraph.

4.    With respect to the relief requested in paragraph 4 of the Prayer for Relief, Plaintiffs specifically and generally deny that Counterclaimant is entitled to any of the relief requested in said paragraph.

5.    With respect to the relief requested in paragraph 5 of the Prayer for Relief, Plaintiffs specifically and generally deny that Counterclaimant is entitled to any of the relief requested in said paragraph.

## AFFIRMATIVE DEFENSES

In addition to the grounds set out in the Answer to the Complaint herein, Defendants hereby additionally allege as follows:

### FIRST AFFIRMATIVE DEFENSE

#### (Failure to State a Claim)

1. The Complaint and each purported claim therein fail to state a claim upon which the relief sought or any relief could be granted.

### SECOND AFFIRMATIVE DEFENSE

#### (Statute of Limitations)

2. The Complaint and each purported claim therein is barred, in whole or in part, by Plaintiffs' failure to bring such claims within the governing statute of limitations.

### THIRD AFFIRMATIVE DEFENSE

#### (Rescission)

3. The Complaint and each purported claim therein is barred, in whole or in part, because any alleged contract(s) was rescinded.

### FOURTH AFFIRMATIVE DEFENSE

#### (Waiver/Acquiescence/Estoppel)

4. The Complaint and each purported claim therein is barred, in whole or in part, by the doctrines of waiver, acquiescence and/or estoppel.

### FIFTH AFFIRMATIVE DEFENSE

#### (Laches)

5. The Complaint and each purported state-law claim therein is barred, in whole or in part, by the doctrine of laches.

## SIXTH AFFIRMATIVE DEFENSE

### (Unclean Hands)

6.      The Complaint and each purported claim therein is barred, in whole or in part, by the equitable doctrine of unclean hands.

## SEVENTH AFFIRMATIVE DEFENSE

### (Unjust Enrichment)

7.      The Complaint and each purported claim therein is barred, in whole or in part, by the equitable doctrine of unjust enrichment.

## EIGHTH AFFIRMATIVE DEFENSE

### (Judicial Estoppel)

8.      The Complaint and each purported claim therein is barred, in whole or in part, by the equitable doctrine of judicial estoppel.

## NINTH AFFIRMATIVE DEFENSE

### (Equitable Estoppel)

9.      The Complaint and each purported claim therein is barred, in whole or in part, by the doctrine of equitable estoppel.

## TENTH AFFIRMATIVE DEFENSE

### (Harmless Error)

10.     Any alleged errors in any of the Termination Notices are harmless error and do not render them invalid.

## ELEVENTH AFFIRMATIVE DEFENSE

### (California Anti-SLAPP Statute Bars State Law Counts)

11.     Plaintiff's state-law Counts are barred by California's anti-SLAPP statute,

California Code of Civil Procedure, Section 425.16 *et seq*.

## TWELFTH AFFIRMATIVE DEFENSE

### (Illegality)

12.     The Complaint and each purported claim therein is barred, in whole or in part, to the extent of any illegality of any matters set forth in the Complaint.

## THIRTEENTH AFFIRMATIVE DEFENSE

### (Claim Preclusion)

13.     The Complaint and each purported claim therein is barred, in whole or in part, by the doctrine of *res judicata* or claim preclusion.

## FOURTEENTH AFFIRMATIVE DEFENSE

### (Issue Preclusion)

14.     The Complaint and each purported claim therein is barred, in whole or in part, by the doctrines of collateral estoppel or issue preclusion.

## FIFTEENTH AFFIRMATIVE DEFENSE

### (Duress)

15.     The Complaint and each purported claim therein is barred, in whole or in part, by the fact that any alleged contract between the parties or their respective predecessors-in-interest is unenforceable and/or void because of duress.

## SIXTEENTH AFFIRMATIVE DEFENSE

### (Statute of Frauds)

16.     The Complaint and each purported claim therein is barred, in whole or in part, by the fact that any alleged contract between the parties or their respective predecessors-in-interest is unenforceable and/or void because of the Statute of Frauds.

## SEVENTEENTH AFFIRMATIVE DEFENSE

### (Failure of Consideration)

17.     The Complaint and each purported claim therein is barred, in whole or in part, by the fact that any alleged contract between the parties or their respective predecessors-in-interest is unenforceable and/or void because the contract(s) lacked consideration.

## EIGHTEENTH AFFIRMATIVE DEFENSE

### (Misrepresentation)

18.     The Complaint and each purported claim therein is barred, in whole or in part, by the fact that any alleged contract between the parties or their respective predecessors-in-interest is unenforceable and/or void because of the misrepresentations of Plaintiffs and/or their predecessors-in-interest.

## NINETEENTH AFFIRMATIVE DEFENSE

### (Against Public Policy)

19.     The Complaint and each purported claim therein is barred, in whole or in part, any alleged contract between the parties or their respective predecessors-in-interest which is contrary to public policy is unenforceable, and any relief requested in the Complaint which is contrary to public policy should not be granted.

## TWENTIETH AFFIRMATIVE DEFENSE

### (Bad Faith)

20.     The Complaint and each purported claim therein is barred, in whole or in part, because Plaintiffs have acted in bad faith for improper purposes with respect to the subject matter of the claims.

## TWENTY-FIRST AFFIRMATIVE DEFENSE

### (Preemption)

21.    The Complaint and each purported state-law claim therein is barred, in whole or in part, because they are preempted by federal law.

## TWENTY-SECOND AFFIRMATIVE DEFENSE

### (Lack of Personal Jurisdiction)

22.    The action is barred because the District Court of Connecticut lacks personal jurisdiction over Victor Miller.

## TWENTY-THIRD AFFIRMATIVE DEFENSE

### (Accord and Satisfaction)

23.    The Complaint and each purported claim therein is barred, in whole or in part, by the fact that any alleged contract between the parties or their respective predecessors-in-interest is unenforceable and/or void because of accord and satisfaction.

## TWENTY-FOURTH AFFIRMATIVE DEFENSE

### (Fraud)

24.    The Complaint and each purported claim therein is barred, in whole or in part, by the Plaintiffs' fraud.

## TWENTY-FIFTH AFFIRMATIVE DEFENSE

### (Unconscionability)

25.    The Complaint and each purported claim therein is barred, in whole or in part, by the fact that any alleged contract between the parties or their respective predecessors-in-interest is unenforceable and/or void because of unconscionability.

## TWENTY-SIXTH AFFIRMATIVE DEFENSE

### (Mistake)

26.     The Complaint and each purported claim therein is barred, in whole or in part, by the fact that any alleged contract between the parties or their respective predecessors-in-interest is unenforceable and/or void because of mistake.

## TWENTY-SEVENTH AFFIRMATIVE DEFENSE

### (Lack of Capacity to Contract)

27.     The Complaint and each purported claim therein is barred, in whole or in part, by the fact that any alleged contract between the parties or their respective predecessors-in-interest is unenforceable and/or void because one or more parties to the contract lacked the capacity to contract.

## TWENTY-EIGHTH AFFIRMATIVE DEFENSE

### (Indefinite Contract)

28.     The Complaint and each purported claim therein is barred, in whole or in part, by the fact that any alleged contract between the parties or their respective predecessors-in-interest is unenforceable and/or void because of indefiniteness.

## TWENTY-NINTH AFFIRMATIVE DEFENSE

### (Assumption of Risk)

29.     The Complaint and each purported claim therein is barred, in whole or in part, by the fact that Plaintiffs assumed the risk when undertaking all activities from which any of their alleged injuries arise.

## THIRTIETH AFFIRMATIVE DEFENSE

### (Lack of Standing)

30.     The Complaint and each purported claim therein is barred, in whole or in part, because Plaintiffs lacks standing to pursue its claims.

## THIRY-FIRST AFFIRMATIVE DEFENSE

### (Failure to Mitigate)

31.     The Complaint and each purported claim therein is barred, in whole or in part, because of Plaintiffs' failure to take reasonable steps to mitigate their alleged losses.

## THIRTY-SECOND AFFIRMATIVE DEFENSE

### (Full Performance)

32.     The Complaint and each purported claim therein is barred, in whole or in part, because as to any alleged contract between the parties or their respective predecessors-in-interest, Defendant has fully performed all of the conditions, covenants and promises on their part to be performed under the purported contracts, except those which have been excused or prevented by the conduct and actions of Plaintiffs.

## THIRTY-THIRD AFFIRMATIVE DEFENSE

### (Law of the Case)

33.     The Complaint and each purported claim therein is barred, in whole or in part, by the doctrine of law of the case.

## THIRTY-FOURTH AFFIRMATIVE DEFENSE

### (Failure to Comply With F.R.C.P.)

34.     Defendant is not required to separately admit or deny each averment contained in each Paragraph of the Complaint due to Plaintiff's failure to comply with Rules 8(a) and 8(e) of

the Federal Rules of Civil Procedure.

## THIRTY-FIFTH AFFIRMATIVE DEFENSE

### (Unknown Defenses)

35.    Defendant believes, and based upon such information and belief alleges that Defendant may have additional affirmative defenses available to him, which are not now fully known and which the answering Defendant is not fully aware.  Defendant accordingly reserves the right to assert any additional affirmative defenses after the same have been ascertained.

## THIRTY-SIXTH AFFIRMATIVE DEFENSE

### (Reservation of Right to Amend)

36.    The Complaint and each purported claim therein fails to state the claims for relief with sufficient particularity to permit Defendant to discern and raise all appropriate defenses, and Defendant therefore reserves his rights to amend or supplement this answer with additional defenses.

## COUNTERCLAIM

## PRELIMINARY STATEMENT

1.        The U.S. Copyright Act of 1976 (the "Copyright Act"), 17 U.S.C. §203 (a),
provides an author with the inalienable right to recapture the copyright to his/her creative
material, after a lengthy waiting period, by statutorily terminating *without cause* prior transfer(s)
of copyright, so long as the author's material is not "work for hire" under the Copyright Act, and
statutory notice of termination is given within a defined time window.

2.        In early 1979 Victor Miller ("Miller" or "Counterclaimant"), a freelance writer,
working at home, authored the original treatment and screenplay of *Friday the 13th* (1980), a
low-budget independent film produced by Sean Cunningham ("Cunningham"). Miller received
sole writing credit on the film. Miller's treatment and much of his screenplay were written by
him on speculation with no guarantee of compensation.  Such material written "on spec" clearly
does not qualify as "work for hire" under Section 101 of the Copyright Act, 17 U.S.C. 101.  To
the extent Miller wrote any of his screenplay under a contract that he and Cunningham later
signed in June 1979 (attached as Exhibit 1 to the Complaint herein), Miller worked as an
independent contractor, not as Cunningham's traditional employee.  This material likewise did
not qualify as "work for hire" because Miller's contract did not "expressly [state] … that the
work shall be considered a work made for hire" as required by 17 U.S.C. 101(2).

3.        In 2016 Miller properly availed himself of his right under Section 203(a) of the
Copyright Act to recover the copyright to his literary material by serving and filing with the U.S.
Copyright Office notices of termination within the prescribed statutory window to do so.  This is
a civil action against plaintiffs/counterclaim-defendants The Manny Company ("Manny") and
Horror Inc. ("Horror") (individually or collectively, "Counterclaim-Defendant(s)" or

"Plaintiff(s)") seeking declaratory relief that Miller's statutory termination is valid and effective under the Copyright Act.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction over the claims set forth in this Counterclaim pursuant to the Copyright Act, 17 U.S.C. § 101 *et al.*, and 28 U.S.C. §§ 1331 and 1338(a).

5.      This Court has personal jurisdiction over the Counterclaim-Defendant Horror because on information and belief Horror is a Massachusetts corporation regularly doing business in the State of Connecticut and in this district and maintains contacts within the State of Connecticut and this district.

6.      This Court has personal jurisdiction over the Counterclaim-Defendant Manny because on information and belief Manny is a Connecticut partnership regularly doing business in the State of Connecticut and in this district and maintains contacts within the State of Connecticut and this district.

7.      Venue is proper in the United States District Court for the District of Connecticut pursuant to 28 U.S.C. §§ 1391(b) and (c) and 1400(a), because the Counterclaim-Defendants are conducting business in this district and are subject to personal jurisdiction in this district.

## PARTIES

8.      Counterclaimant Miller is an individual, who is a citizen and long-time resident of the State of California, and is and at all times has been a citizen of the United States.

9.      Counterclaimant is informed and believes and based thereon alleges that Counterclaim-Defendant Manny is a partnership organized under the laws of the State of Connecticut; that it has its principal place of business in the State of California, and that it is

owned, run and/or controlled by its founder, Cunningham, who is a citizen and long-time resident of the State of California.

10.     Counterclaimant is informed and believes and based thereon alleges that Counterclaim-Defendant Horror is a corporation organized under the laws of the State of Massachusetts and has its principal place of business in the State of Massachusetts, but regularly conducts business in the State of California.

11.     Counterclaimant is informed and believes and based thereon alleges that the fictitiously named Counterclaim-Defendants captioned hereinabove as Does 1 through 10, inclusive, and each of them, were in some manner responsible or legally liable for the actions, damages, events, transactions and circumstances alleged herein.  The true names and capacities of such fictitiously named Counterclaim-Defendants, whether individual, corporate, associate, or otherwise are presently unknown to Counterclaimant, and Counterclaimant will amend this Counterclaim to assert the true names and capacities of such fictitiously named Counterclaim-Defendants when the same have been ascertained.  For convenience, each reference herein to the named Counterclaim-Defendant(s) shall also refer to the Doe Counterclaim-Defendants and each of them.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

12.     Miller, a Yale graduate, has authored, and published, numerous novels, teleplays and screenplays. In 1979 Miller's best friend was Sean Cunningham, an independent film producer. Cunningham had recently seen the slasher horror movie *Halloween* (1978), and inspired by its enormous financial success, he wanted to produce a slasher horror film.  Lacking the special skills necessary to write a screenplay, Cunningham sought the collaboration of Miller, a talented freelance writer, who by that time was already an established author.

13.    Miller watched *Halloween* and soon wrote a detailed film treatment for a horror movie he entitled "The Long Night at Camp Blood" (the "Treatment").  Shortly afterwards, Miller wrote an original screenplay incorporating the elements of his Treatment, also originally titled "The Long Night at Camp Blood" (the "First Draft"). Miller received no compensation while writing the Treatment and the First Draft.  Miller wrote the Treatment and First Draft entirely of his own volition, and although he hoped that Cunningham would succeed to raise independent financing for this horror film, Miller wrote the Treatment and First Draft with no guarantee of compensation.

14.    Miller wrote the Treatment, First Draft and subsequent screenplay material, alone, at his home, on his own "IBM Selectric" typewriter, using his own typewriter ribbon and paper.  Though Miller never hired an assistant, he certainly had discretion to do so.  Miller set his own hours and worked at his own pace. Of course, Miller tossed around ideas for the slasher film with Cunningham, but Miller was not compelled to accept and implement Cunningham's suggestions.

15.    Cunningham was impressed by the Treatment and First Draft, but he wanted a more commercial title for the film.  He called it "Friday 13."  Miller wrote a second draft screenplay using the title Friday 13 (the "Second Draft"). As usual, Miller worked from home, using his own instrumentalities and materials.

16.    As the Second Draft was nearing completion, Cunningham presented Miller with a two-page form screenplay agreement ("Agreement") between Cunningham's alleged entity, Manny, and Miller, which Miller and Cunningham signed on or about June 4, 1979.  The Agreement which is attached as Exhibit "1" to the Complaint herein includes no agreement (or mention) that Miller's screenplay material shall be a "work for hire" under the Copyright Act.

The Agreement also makes no mention of Miller's Treatment. After the Agreement was executed, Miller made relatively small revisions to the Second Draft, other than altering the ending, and completed a final shooting script (the "Final Draft"). Miller's original Treatment, First Draft, Second Draft and Final Draft are collectively referred to herein as the "Screenplay." At no point did Cunningham, Manny, or any other person or entity have the ability to assign additional projects to Miller, as the Agreement was only for a "first draft screenplay" and "final draft screenplay."

17.      Miller was not paid a salary by Manny.  He was paid the modest $ 9,282 fee set forth in the Agreement for a "first draft screenplay" and "final draft screenplay", collectively. Manny did not withhold from such compensation any income tax, social security and Medicare (nor pay an employer's matching amount), nor upon information and belief did Manny report or pay payroll taxes or Federal Unemployment tax (FUTA) with respect to Miller, as required by law for traditional employment.  Miller also never received any customary employment benefits from Manny, such as healthcare, a pension, unemployment insurance, or workers' compensation.

18.      Cunningham was impressed and encouraged by Miller's Screenplay to such an extent that on July 4, 1979, he bought a full-page advertisement in *Variety* to attract financing, which promoted the (yet-to-be-produced) movie as "FRIDAY the 13th THE MOST TERRIFYING FILM EVER MADE!"  The ad attracted the attention of Phil Scuderi of Georgetown Productions, Inc. ("Georgetown") which allegedly financed the movie.

19.      Pre-production of the film was conducted in or about July – August 1979 and principal photography of the film occurred in or about September – October, 1979.

20.      Paramount Pictures released the resulting film "Friday the 13th" (the "Film") on April 18, 1980.  Miller received sole credit as the writer of the Film.  The Film was enormously

successful, and launched an extremely lucrative entertainment franchise. On information and belief, Cunningham and his successors have made and continue to reap millions of dollars from the Film and franchise. His "best friend" Miller who created and authored the Film's story and Screenplay received $9,282, and relatively modest residual payments.

21.     The Treatment and that portion of the Screenplay Miller wrote "on spec" with no guarantee of compensation does not qualify as "work for hire" under the Copyright Act. To the extent Miller wrote a portion of the Screenplay subsequent to his Agreement, Miller worked as an independent contractor specially commissioned to create such material for use as a part of a motion picture. Accordingly, such material likewise does not qualify as "work for hire" because the parties never "expressly agree[d] in a written instrument signed by them that the work shall be considered a work made for hire" as required by 17 U.S.C. § 101(2).

22.     Pursuant to the Copyright Act, 17 U.S.C. § 203(a), Miller as the author of the Screenplay, has the full power and authority to recover his copyright in the Screenplay by serving within the statutorily defined time window (June 4, 2014 to June 4, 2017) a two-year advance notice of termination on Cunningham/Manny or on Manny's successor in interest and filing that notice with the U.S. Copyright Office prior to the notice's effective termination date.

23.     On January 26, 2016, Miller availed himself of his statutory termination right by serving Cunningham/Manny with a notice of termination, with an effective termination date of January 25, 2018 (the "Termination Notice") and by thereafter filing the notice in 2016 with the U.S. Copyright Office. On June 27, 2016, Miller served an amended notice of termination, with an effective termination date of July 1, 2018 ("First Amended Termination Notice"), revised to include as recipients Plaintiff Horror and other alleged successors of Manny who were not reflected in the U.S. Copyright Office records regarding the Screenplay and thereafter filed that

notice in 2016 with the U.S. Copyright Office.  In an abundance of caution, when the First

Amended Termination Notice to one recipient was returned, Miller, on July 14, 2016, reissued

the notice of termination with an effective date of July 15, 2018 ("Second Amended Termination

Notice"), and modified some recipients' addresses, and thereafter also filed that notice in 2016

with the U.S. Copyright Office.  .  The Termination Notice, First Amended Termination Notice

and Second Amended Termination Notice are sometimes collectively referred to herein as the

"Termination Notices" or the "Termination." In connection with the Termination, Miller

studiously complied with the procedures set forth in 17 U.S.C. § 203(a) and 37 C.F.R. § 201.10,

the regulations promulgated thereunder by the Register of Copyrights.

24.     Within weeks after Horror was formally served, Counterclaim Defendants filed

their complaint in the above-titled action, accusing Miller of a "disingenuous money grab," and

challenging the validity of the Termination on the purported ground that the Screenplay was a

"work for hire" under the Copyright Act.  Incredibly, though Miller was an obvious freelancer

and his relationship with Manny lacked all indicia of traditional hierarchical employment,

Counterclaim-Defendants frivolously claimed that Miller wrote the Screenplay as Manny's

regular employee, not as an independent contractor commissioned to write a motion picture

screenplay, knowing that the Screenplay Agreement did not qualify under 17 U.S.C. § 101(2).

In addition, Counterclaim-Defendants sued Miller for alleged breach of contract, slander of title

and violation of the Connecticut Unfair Trade Practices Act, all based on their unsupported

assertion that the Termination was invalid under federal law.

## COUNT I – DECLARATORY JUDGMENT

(By Counterclaimant Against All Counterclaim-Defendants)

25.     Counterclaimant re-alleges and incorporates by reference paragraphs 1 through

24 inclusive, as though fully set forth herein.

26.     By reason of the foregoing facts, an actual and justiciable controversy has arisen and now exists between Counterclaimant and Counterclaim-Defendants concerning their respective rights and interests regarding the Screenplay, for which Counterclaimant desires a declaration of rights.

27.     Counterclaimant contends, and Counterclaim-Defendants deny, that his Termination is valid and effective under the Copyright Act.

28.     Counterclaimant thus seeks a declaration from this Court that:

a.     Miller's Screenplay (and the Treatment incorporated therein) are not works for-hire under Section 101 of the Copyright Act (17 U.S.C. § 101).

b.     Miller's Termination Notice is valid and effective under the Copyright Act, and will terminate on January 25, 2018, the date set forth therein, any and all grant(s), assignments(s) or transfer(s) by Miller of his copyright in and to the Treatment and Screenplay, and, as of said date, Miller will have recaptured and will own the U.S. copyright in and to the Treatment and Screenplay he authored.

c.     Alternatively, Miller's First Amended Termination Notice is valid and effective under the Copyright Act, and will terminate on July 1, 2018, the date set forth therein, any and all grant(s), assignments(s) or transfer(s) by Miller of his copyright in and to the Treatment and Screenplay, and, as of said date, Miller will have recaptured and will own the U.S. copyright in and to the Treatment and Screenplay he authored.

d.     Alternatively, Miller's Second Amended Termination Notice is valid and effective under the Copyright Act, and will terminate on July 15, 2018, the date set forth therein, any and all grant(s), assignments(s) or transfer(s) by Miller of his copyright in

and to the Treatment and Screenplay, and that as of said date, Miller will have recaptured and will own the U.S. copyright in and to the Treatment and Screenplay he authored.

29.    A declaration of the Court is necessary pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et seq.*, so that the parties may know their respective rights and obligations as to the Termination Notices and the copyright interests thereby recovered by Counterclaimant Miller.

## PRAYER FOR RELIEF

WHEREFORE, Counterclaimant prays for judgment against Counterclaim-Defendants as follow:

1.    For a declaration that:

    a.    Miller's Termination is valid and effective under the Copyright Act as alleged hereinabove;

    b.    As of the effective Termination date determined by the Court, Miller will own exclusively the U.S. Copyright in the Treatment and Screenplay authored by him; and

    c.    As of that effective Termination date, Counterclaim-Defendants, their licensees, assigns or successors, may not continue to exploit the U.S. copyright to the Screenplay, in whole or in part, without a new license from Miller.

2.    For costs of suit;

3.    For reasonable attorneys' fees; and

4.    For such other and further relief as this Court may deem just and proper.

RESPECTFULLY SUBMITTED,

DEFENDANT/COUNTERCLAIMAINT,

VICTOR MILLER

By: /s/ Marc Toberoff
        Marc Toberoff (FBN phv08515)
        TOBEROFF & ASSOCIATES, PC
        23823 Malibu Rd., Ste. 50-363
        Malibu, CA 90265
        Federal Bar No. phv08515
        Telephone: (310) 246-3333
        Facsimile: (310) 246-3101
        Email: mtoberoff@toberoffandassociates.com

        His attorneys.

## JURY TRIAL DEMANDED

Defendant/Counterclaimant hereby requests a trial by jury on each claim for relief or portion thereof alleged in the Complaint and/or Counterclaim for which a trial by jury is allowable.

DEFENDANT/COUNTERCLAIMAINT,

VICTOR MILLER

By: /s/ Marc Toberoff
Marc Toberoff (FBN phv08515)
TOBEROFF & ASSOCIATES, PC
23823 Malibu Rd., Ste. 50-363
Malibu, CA 90265
Federal Bar No. phv08515
Telephone: (310) 246-3333
Facsimile: (310) 246-3101
Email: mtoberoff@toberoffandassociates.com

His attorneys.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

Horror, Inc., a Massachusetts
corporation, and The Manny
Company, a Connecticut Limited
Partnership,

                Plaintiffs,
    vs.

Victor Miller, an individual; and
DOES 1 through 10,

                Defendants.

Case No.: No. 3:16-cv-01442-SRU

---

Victor Miller, and individual

                Counterclaimant,

    vs.

Horror, Inc., a Massachusetts
corporation, The Manny Company, a
Connecticut Limited Partnership;
and Does 1 through 10,

                Counterclaim Defendants.

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing Answer and Counterclaim, dated November 17, 2016 was served electronically by the Court's ECF system on said date and that all interested parties in this case are registered CM/ECF users.

The undersigned declares under penalty of perjury under the laws of the United States that the above is true and correct.


Dated: November 17, 2016                     /s/ Marc Toberoff