# UNITED STATES DISTRICT COURT

# DISTRICT OF CONNECTICUT

| | |
|---|---|
| HORROR INC., a Massachusetts corporation; and MANNY COMPANY, a Connecticut Limited Partnership,<br><br>　　　　　Plaintiffs,<br>　vs.<br><br>VICTOR MILLER, an individual; and DOES 1 through 10,<br><br>　　　　　Defendants. | Case No.: No. 3:16-cv-01442-SRU<br><br><br>**July 14, 2017** |
| VICTOR MILLER, an individual;<br><br>　　　　　Counterclaimant,<br>　vs.<br><br>HORROR INC., a Massachusetts corporation; and MANNY COMPANY, a Connecticut Limited Partnership; and DOES 1 through 10,<br><br>　　　　　Counterclaim-Defendants. | |

### DEFENDANT AND COUNTERCLAIMANT VICTOR MILLER'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

　　　　　　　　　　　　　　　　　　Marc Toberoff (Federal Bar No. phv08515)
　　　　　　　　　　　　　　　　　　*mtoberoff@toberoffandassociates.com*
　　　　　　　　　　　　　　　　　　TOBEROFF & ASSOCIATES, P.C.
　　　　　　　　　　　　　　　　　　23823 Malibu Rd, Ste 50-363
　　　　　　　　　　　　　　　　　　Malibu, California, 90265
　　　　　　　　　　　　　　　　　　Telephone:(310) 246-3333
　　　　　　　　　　　　　　　　　　Fax: (310) 246-3101

　　　　　　　　　　　　　　　　　　*Attorneys for Defendant and*
　　　　　　　　　　　　　　　　　　*Counterclaimant Victor Mi*

# TABLE OF CONTENTS

I.   PLAINTIFFS' CENTRAL ARGUMENT THAT "READ DOES NOT APPLY" HAS NO SUPPORT IN THE LAW ..................................................................................1

II.  THE REID FACTORS WEIGH HEAVILY IN MILLER'S FAVOR ..............................4

    1.  Hiring Party's Right To Control. ......................................................................4

    2.  Skill. ...................................................................................................................4

    3.  Miller Wrote at Home On His Own "Instrumentalities." ...........................4

    4.  Miller Wrote Over A Short Duration. ............................................................5

    5.  Miller Worked On a Project by Project Basis. ..............................................5

    6.  Manny Had No Right to Assign Miller Additional Projects. ......................5

    7.  Miller Decided When and For How Long He Worked. ..............................5

    8.  Miller Was Paid Discrete Sums for Specified Material. ..............................5

    9.  Nothing Prevented Miller From Hiring His Own Assistant. .....................6

    10. Whether Manny Was "In Business" of Writing Screenplays Is Indeterminate. .......6

    11. Miller Received No Health Insurance, Pension or Any Other Employee Benefits. 6

    12. Plaintiffs Treated Miller As An Independent Contractor for Tax Purposes. ...........7

III. PLAINTIFFS' "NO TRANSFER" ARGUMENT IS WITHOUT MERIT ......................8

IV. MBA DOES NOT TRANSFORM "SPEC" WORK INTO "WORK FOR HIRE" .........10

V.  PLAINTIFFS' CO-AUTHORSHIP CLAIM IS BARRED BY SECTION 507(b) ..........10

# **TABLE OF AUTHORITIES**

**Cases**

*Aymes v. Bonelli*, 980 F.2d 857, 861 (2d Cir. 1992) ............................................................... *passim*

*Baisden v. I'm Ready Prod., Inc.*, 693 F.3d 491, 501 (5th Cir. 2012) ............................................ 9

*Brower v. Martin*, 446 F.Supp.2d 232, 234 (S.D.N.Y. 2006) ........................................................ 2

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ...................................................................... 8

*Community for Creative Non-Violence v. Reid*, 490 U.S. 730 (1989) .................................. *passim*

*Familoe v. Ford Motor Co.*, 277 F.Supp.2d 778 (N.D. Ohio 2002) ............................................... 3

*Foad Consult'g Grp. v. Azzalino*, 270 F.3d 821, 828-829 (9th Cir. 2001) .................................... 9

*Gilpin v. Siebert*, 419 F.Supp.2d 1288 (D. Oregon 2006) ............................................................. 2

*Graham v. James*, 144 F.3d 229, 235 (2d Cir. 1999) .................................................................... 8

*Hanson v. Friends of Minn. Sinfonia,* 181 F.Supp.2d 1003 (D. Minn. 2002) ............................... 2

*I.A.E., Inc. v. Shaver*, 74 F.3d 768, 774-775 (7th Cir. 1996) ......................................................... 8

*Jackson v. Gaylord Entertainment Co*., 2007 WL 4480704, (M.D. Tenn. 2007) ......................... 2

*Jacob Maxwell, Inc. v. Veeck*, 110 F.3d 749, 753 (11th Cir.1997) ................................................ 9

*Kennedy v. Nat'l Juvenile Detention Ass'n*, 187 F.3d 690, 694 (7th Cir. 1999) ............................ 9

*Kennel v. Dover Garage, Inc*., 816 F.Supp. 178, 181 (E.D.N.Y. 1993) ........................................ 3

*Knight v. State Univ. of N.Y. at Stony Brook*, 2014 WL 4639100 at *1-3, 7 (E.D.N.Y. 2014) ...... 2

*Korman v. HBC Fla., Inc.*, 182 F.3d 1291, 1293-94 (11th Cir. 1999) ........................................... 9

*Laborers' Pension Trust Fund v. Pref. Trenching, Inc*., 969 F.Supp. 455 (E.D. Mich. 1997) ....... 3

*Lerohl v. Friends of Minn. Sinfonia*, 322 F.3d 486, 487-93 (8th Cir. 2003) .................................. 2

*Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 292 (2d Cir. 2002) ....................................... 3, 8

*Metro-Goldwyn-Mayer Studios*, 7 NLRB 662, 1938 WL 9377 (1938) ........................................ 1

*Mills Music, Inc. v. Snyder*, 469 U.S. 153, 172-73 (1985) ............................................................ 4

*Music Sales Corp. v. Morris*, 73 F.Supp.2d 364, 378 (S.D.N.Y.1999) ....................................... 10

*N.L.R.B. v.  United Insurance Co. of America*, 390 U.S. 254, 255 (1968) .................................... 2

*Nationwide Mutual Ins. Co. v. Darden*, 503 U.S. 318, 323-324 (1992) .......................................... 3

*Perma Res. & Dev. Co. v. Singer Co.*, 410 F.2d 572, 578 (2d Cir. 1969) ....................................... 8

*Sec'y of the Interior v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990) .......................................... 8

*Siegel v. Warner Bros. Entertainment Inc.*, 658 F.Supp.2d 1036, 1093-94 ................................. 10

**Statutes**

17 U.S.C. § 203 ................................................................................................................................ 9

17 U.S.C. § 507(b) ........................................................................................................................ 10

29 U.S. § 152(a) .............................................................................................................................. 1

29 U.S.C. § 159(c). ......................................................................................................................... 2

37 C.F.R. § 201.10(e)(1) ........................................................................................................... 9, 10

**Other Authorities**

H.R. Rep. No. 94-1476, at 125 (1976) ........................................................................................... 3

William F. Patry, *Patry On Copyright* § 7:45 (2008) ................................................................... 10

I.  **PLAINTIFFS' CENTRAL ARGUMENT THAT "REID DOES NOT APPLY" HAS NO SUPPORT IN THE LAW[1]**

Plaintiffs erroneously insist that "federal labor law [not copyright law] governs and affirmatively dictates that Miller was [Manny's] employee" because "the NLRA provides that only employees, and not independent contractors, have the right to organize," and that "the NLRB has necessarily already determined that screenwriters … are employees rather than independent contractors[.]" Pl. Opp. 12-13. None of Plaintiffs' assertions hold up under scrutiny.

First, Plaintiffs' predicates are false. The NLRB certified the WGA's predecessor in *Metro-Goldwyn-Mayer Studios*, 7 NLRB 662, 1938 WL 9377 (1938), which Plaintiffs tellingly never cite. That NLRB decision contained no legal analysis under the NLRA, and both the facts *and* NLRA were far different in 1938 than today and in 1979, when Miller wrote his material.

As Plaintiffs admit, most screenwriters in 1938 worked as regular full-time employees within the "Studio System." Pl. Opp. 21. Even as to freelancers, the NLRA in 1938 did *not* exclude such independent contractors from collective bargaining, as Plaintiffs would have this Court believe. That exclusion resulted from 1947 amendments to the NLRA by the Taft-Hartley Act, 29 U.S.C. §152(a). After the demise of the Studio System in the 1950's nearly all screenwriters worked as freelancers, like Miller. Thus, in 1979 and today, screenwriters would likely be *excluded* by the *amended* NLRA as independent contractors. The WGA existed in 1979 not because screenwriters are "employees" under any substantive legal analysis, but because

---

[1] Miller respectfully refers the Court to Section I (pp. 10-21) of his Opposition to Plaintiffs' Motion for Summary Judgment (Dkt. No. 51) ("Miller Opp.") which is incorporated herein by reference. Miller's Opposition (Dkt. No. 51), the Declarations of Victor Miller (Dkt. No. 51-1) ("Miller Decl. II") and Marc Toberoff, (Dkt. No. 51-2) ("Tob. Decl. II"), and attached exhibits, in support of Miller's Opposition, are specifically incorporated herein by reference as though fully set forth herein. The following citation abbreviations shall also apply to this brief: Declaration of Victor Miller (Dkt. No. 45-1) ("Miller Decl. I"); Declaration of Marc Toberoff (Dkt. No. 45-2) ("Tob. Decl. I"), Declaration of Julia Haye (Dkt. No. 45-2) ("Haye Decl."); Declaration of Sean S. Cunningham (Dkt. No. 43-4) ("Cunn. Decl."); Tob. Decl. II, Ex. P (excerpts from transcript of Sean Cunningham's deposition) ("Cunn. Depo.").

once certified by the NLRB, a labor organization can remain indefinitely. 29 U.S.C. §159(c).

Even notwithstanding this, there is no legal support for Plaintiffs' predicate that federal labor law under the NLRA preempts copyright law under the Copyright Act, and Plaintiffs tellingly provide none. Nor is there any legal basis for Plaintiffs' assertion that a 1938 NLRB decision precludes the multi-factor agency analysis mandated by the Supreme Court in *Reid* and by the Second Circuit in *Aymes* as to "work for hire" under the Copyright Act. In desperation, Plaintiffs solely cite *and* mispresent *Gilpin v. Siebert*, 419 F.Supp.2d 1288 (D. Oregon 2006), where Gilpin admitted she was an "employee" under Section 101(1), and thus the sole issue before the Court was whether the work fell within *the scope* of that employment. *Id*. at 1303; *see* 2005 WL 3285543, at *3 (D. Or.)(Trial Motion)(limiting issue to "scope of employment").

By contrast, Miller demonstrated that even when a union member is hired under its collective bargaining agreement ("CBA"), Courts routinely apply *Community for Creative Non-Violence v. Reid*, 490 U.S. 730 (1989) to decide if he/she is an "employee" under the relevant statute. Miller's Opposition (at 15-16) accurately describes: *Lerohl v. Friends of Minn. Sinfonia*, 322 F.3d 486, 487-93 (8th Cir. 2003) (union member musicians hired, paid and received pension contributions per CBA, not "employees" under *Reid* factors), and the related *Hanson v. Friends of Minn. Sinfonia,* 181 F.Supp.2d 1003 (D. Minn. 2002) (same); *Jackson v. Gaylord Ent. Co.*, 2007 WL 4480704 at *1 (M.D. Tenn. 2007) (singer union member, hired per CBA, not an "employee" under *Reid*); *Brower v. Martin*, 446 F.Supp.2d 232, 234 (S.D.N.Y. 2006) (applied *Reid* factors to see if songs written by union member were "work for hire"); and *Knight v. State Univ. of N.Y. at Stony Brook*, 2014 WL 4639100 at *1-3, 7 (E.D.N.Y. 2014) (denying motion to dismiss Union worker's statutory claim after analyzing "employee" status under *Reid* factors).

Still more cases do the same. In *Kennel v. Dover Garage, Inc.*, 816 F.Supp. 178, 181

(E.D.N.Y. 1993) the Court turned to *Reid's* multi-factor agency analysis to determine whether a union member taxi-driver, hired under a CBA and receiving CBA benefits, was an "employee" under the Age Discrimination Employment Act. In *Laborers' Pension Trust Fund v. Pref. Trenching, Inc.*, 969 F.Supp. 455 (E.D. Mich. 1997) a pension fund sued under ERISA for payments due workers under their Local Unions' CBAs. To determine the workers eligibility as "employees" the Court applied the multi-factor agency test applicable under *Nationwide Mutual Ins. Co. v. Darden*, 503 U.S. 318, 323-324 (1992), citing *Reid.* Similarly, in *Familoe v. Ford Motor Co.*, 277 F.Supp.2d 778 (N.D. Ohio 2002), a longtime union member and disability retiree sued under the Americans with Disabilities Act (ADA), the court turned to the common-law agency test in *Darden* and *Reid* to see if plaintiff was an "employee" under ADA. *Id*. at 779, 790.

Significantly, *none* of the above detailed decisions, gave *any weight* to the fact that the plaintiff was a union member employed pursuant to the union's CBA (Plaintiffs' core argument) in deciding whether he was a statutory "employee" under *Reid's* requisite agency factors.

Furthermore, under 17 U.S.C. § 203(a) termination "may be effected notwithstanding any agreement to the contrary," including a CBA. *See* H.R. Rep. No. 94-1476, at 125 (1976)(termination right "cannot be … contracted away."); *Stewart v. Abend,* 495 U.S. 207, 230 ("Copyright Act provides … an inalienable termination right."); *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 292 (2d Cir. 2002) (holding that to the extent settlement agreement is read to nullify the termination right by recasting work as "for hire" it is void as an "agreement to the contrary").

"The principal purpose of the [termination right] was to provide added benefits to authors. … That general purpose is plainly defined in the legislative history and, indeed, is fairly inferable from the text of [the statute] itself." *Mills Music, Inc. v. Snyder*, 469 U.S. 153, 172-73 (1985). The 1977 MBA neither mentions "work for hire" or termination, nor supports Plaintiffs'

3

*Hobson's choice* where authors waive un-waivable termination rights by joining the WGA.

## II.     THE REID FACTORS WEIGH HEAVILY IN MILLER'S FAVOR

Plaintiffs admit, as they must, that Miller's literary material does not qualify as "work[] made for hire under Section 101(2)." Pl. Opp. 11, n.7. Miller's Treatment and Screenplay are therefore not "works for hire" as a matter of law because Miller does not qualify as Manny's Section 101(1) "employee" under *Reid* and *Aymes v. Bonelli*, 980 F.2d 857, 861 (2d Cir. 1992).

**1.   *Hiring Party's Right To Control*.** The relationship between Miller and Cunningham, even if we accepted Plaintiffs' *post-hoc* exaggerations (re: "tutorials," "ideas," an insignificant non-Miller motorcycle-cop scene in *the Film*) boiled down to an entrepreneurial creative collaboration between friends – Miller, the writer, and Cunningham, the director/producer – working out of their houses on a low-budget indie film. When the dust settles it seems clear that neither acted as if Manny had *the right* to control Miller, nor thought about it for one second as they collaborated. Plaintiffs do not even attempt to show a "right to control." They strain to argue *actual* control, when the Supreme Court has expressly rejected this approach. *Reid*, 490 U.S. at 742. Manny's role was very short-lived. It did not even hire the Film's crew. Cunn. Depo. 248: 20-22. Georgetown took over at an early stage as a condition to financing the Film, and even Cunningham had no legal right to control the Film. Tob. Decl., Exs. D, E. Furthermore, *Reid,* 490 U.S. at 742, cautions against placing too much weight on the right to control as that would render the distinction between Sections 101(1) and (2) illusory. *See Aymes,* 980 F.2d 862, 864 (finding independent contractor status even though "clear" that hiring party had right to control).

**2.   *Skill*.** Plaintiffs admit that Miller engaged in a skilled profession. Pl. Opp. 19-20.

**3.   *Miller Wrote at Home On His Own "Instrumentalities."*** It is undisputed that Miller *wrote* at home on his IBM Selectric. Miller Decl., ¶ 15; Opp. 22. Plaintiffs' disjointed argument,

crediting the MBA, does not change these facts. Nor does Miller's use *after Miller wrote his material* of a copy machine or reformatting by a secretary, change this. Cunn. Depo. 213:8-16.

4. ***Miller Wrote Over A Short Duration***. Plaintiffs' failure to address this fairly obvious fact, acts as an admission. Miller Decl., ¶ 18; Cunn. Depo. at 127:5-7; 128:19-25; 129: 25-130:3.

5. ***Miller Worked On a Project by Project Basis***. Plaintiffs also admit that Miller was hired "on a project basis." Pl. Opp. 23. That Miller and Cunningham worked on two prior films does not alter this. Plaintiffs MBA muddying is also unavailing. The MBA covers writers hired on a term basis as well (*e.g.*, for an ongoing TV series). Haye Decl., Ex. N at 63 (Art. 13.B.7.s.). Plaintiffs' two labor cases do not alter this factor under *Reid* and *Aymes* in a copyright case.

6. ***Manny Had No Right to Assign Miller Additional Projects***. Plaintiffs make the baseless accusation that Miller's reference to "projects" (not tasks) is "intentionally misleading" (Pl. Opp. 25) when both *Reid*, 490 U.S. at 751 and *Aymes*, 980 F.2d at 863 refer to this factor *exactly* as Miller did. Plaintiffs can point to no evidence of any *right* of Manny to assign Miller additional projects, and the Agreement clearly evinces a discrete project and tasks. Miller Decl., Ex. D. Miller's writing of the Film's final scene was either encompassed in completion of the "final draft screenplay" or voluntary. Plaintiffs' cites to MBA Arts. 10-11 (arbitration); 13 A.7 (re: contract to write Treatment with "option for additional literary material") and 13 A.8. (termination for failure to write contracted material) are inapplicable to this factor on their face.

7. ***Miller Decided When and For How Long He Worked***. Plaintiffs admit this as they must, but try to credit the MBA. Plaintiffs' MBA citations (Arts. 13.A.(1)-(4), 19.(A)) do not even speak to this. *Id*. Plaintiffs also distort this factor, which refers to Miller choosing, as he did, the days and hours of the day he wrote. Miller Decl., ¶¶ 17-18; Cunn. Depo. 221:22 – 222:5.

8. ***Miller Was Paid Discrete Sums for Specified Material***. Plaintiffs also try to obfuscate

this "method of payment" factor. It refers to whether the hired party was paid a regular wage / salary or discrete fees. *Aymes,* 980 F.2d at 863. Plaintiffs admit, as they must, that Miller was paid "flat sums" per the Agreement. Miller, Decl., Ex. D. Plaintiffs calling this a "salary" is silly. Plaintiffs make much of the fact that Miller was entitled to contingent compensation: residuals (*if* Film airs on TV) and small sequel payments *if* sequel films are produced, but they cannot explain how this approximates the regular wage associated with conventional employment. (Though irrelevant, Plaintiffs' citations also do not show Miller "paid over $200,000" as trumpeted.)

9. *Nothing Prevented Miller From Hiring His Own Assistant*. While admittedly not a key point, Plaintiffs present nothing to contradict it. Instead, they again try to muddy the analysis by pretending this factor refers to Miller hiring another *to write* his material. Of course, a writer's assistant does not do this (*e.g.*, they keep a calendar, take notes at meetings, do research, etc.).

10. *Whether Manny Was "In Business" of Writing Screenplays Is Indeterminate*. This factor will generally be of little use" and "carries very little weight". *Aymes*, 980 F.2d at 863. Plaintiffs nonetheless spend two pages on it with bold italicized statements. In reality, it seems Manny was a shell formed for *Manny's Orphans*, and used on *Friday the 13th* just for Miller's Agreement. Tob. Decl., ¶ 8, Ex. G at PL896. Manny has no credits on *imdbpro.com*. When Miller turned in material Cunningham slapped "Sean Cunningham Films" on it. Cunn. Decl., Exs. D, G. Given all this it is questionable whether Manny was a real business of any kind.

11. *Miller Received No Health Insurance, Pension or Any Other Employee Benefits*.

Plaintiffs, who have the burden of proof as to their work for hire defense, *proffered <u>no</u> evidence* of Manny's provision to Miller of any "employee benefits" because Manny provided none: no health insurance or medical plan, no paid vacation, no pension, no worker's comp., unemployment or life insurance. Miller Decl., ¶ 24; Cunn. Depo. 233:16-20, 234:20-22. Nor did

Manny (or anyone else) contribute a percentage of Miller's compensation to the WGA's pension and health fund in 1979 or thereafter, as clearly shown by record PWGA evidence. Declaration of Jennifer C. Parsignault, Manager-Compliance PWGA; Tob. Decl., Ex. C.; Tob Decl. II, Ex. O. Plaintiffs' objections are disingenuous. The PWGA produced the same evidence in response to Plaintiffs' subpoena. Declaration of Marc Toberoff in Reply ("Tob. Reply Decl."), Ex. U.

Plaintiffs repeatedly try to mislead the Court, falsely stating that "Miller himself and the WGA have acknowledged that Miller has received all such ERISA-plan payments." Pl. Opp. 32, 39, *citing* Haye Decl., Exs. W, ¶ 3, X, ¶ 4. *None* of the cited Exhibits evidence this. What they do show is that Plaintiffs conflate residuals and sequel payments, eventually paid after two lawsuits, with payments to the PWGA pension and health fund that were *never* paid. Plaintiff deviously cite references to "all payments payable" while omitting that these concerned *a dispute solely about residuals and sequel payments*. *Id*., Tob. Decl., Exs. F, ¶ 2; G, ¶¶ 2, 15. Plaintiffs similarly misrepresent the "employee benefit" factor to include contingent compensation like residuals and sequel payments, when it refers to things like "health, unemployment or life insurance," as indicia of "conventional" employment. *Aymes*, 980 F.2d at 862; *Reid*, 490 U.S. at 739, 752.

**12.  *Plaintiffs Treated Miller As An Independent Contractor for Tax Purposes*.**

Plaintiffs proffered *no evidence* that they withheld from Miller's fees, any federal or state income tax, social security and/or medicare, or paid FUTA or FICA taxes, all as required for conventional employees. Cunningham just paid the flat sums in the Agreement, as one would expect. Cunn. Depo. 248: 20-22. Though it is not Miller's burden to prove this negative, Cunningham's letter enclosing a check for the *gross amount* of $3,713, corresponding to the flat sum in Miller's Agreement, evidences that there was no withholding. Miller Decl., ¶ 22, Ex. F.

As the *Reid* factors overwhelmingly favor Miller's status as an independent contractor, it

7

is no wonder that Plaintiffs struggle to evade *Reid* and *Aymes* with an unsupported labor law theory. When Plaintiffs finally address the *Reid* factors their arguments are riddled with misleading statements, mischaracterizations of the evidence and convoluted irrelevancies – all of which is wholly insufficient to avoid summary judgment. In such cases "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery … against a party who fails to make a showing" as to "an element essential to that party's case, and on which [they] will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Rule 56 does not require that Miller negate the elements of Plaintiffs' case, though Miller has done so. *Id.*[2]

### III. PLAINTIFFS' "NO TRANSFER" ARGUMENT IS WITHOUT MERIT[3]

17 U.S.C. § 203(a)'s termination right broadly applies to "[t]he exclusive or non-exclusive grant of a transfer or license of copyright or of any right under copyright." Where material created per an employment agreement, falls short of "work for hire" under Section 101, Courts routinely find an implied non-exclusive copyright license by the author. *See Graham v. James*, 144 F.3d 229, 235 (2d Cir. 1999)(finding implied copyright license from parties' conduct after concluding material was not "work for hire" under *Reid* and *Aymes*) citing *I.A.E., Inc. v. Shaver,* 74 F.3d 768, 774-775 (7th Cir. 1996)( finding implied license from employment contract to create designs; "courts… universally have recognized that a nonexclusive license may be implied from conduct"); *Kennedy v. Nat'l Juv. Det. Ass'n,* 187 F.3d 690, 694 (7th Cir. 1999); *Foad Consult'g Grp. v. Azzalino,* 270 F.3d 821, 828-829 (9th Cir. 2001). Nor is it an impediment that parties intended the hiring party to have exclusive rights. *Baisden v. I'm Ready Prod. Inc.,*

---

[2] The uncorroborated conclusions in the affidavits of Cunningham and Barsamian, contradicted by record evidence, are insufficient to defeat summary judgment. *Lujan, Sec'y of the Interior v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990); *Perma Res. & Dev. Co. v. Singer Co*., 410 F.2d 572, 578 (2d Cir. 1969)(articulating "sham affidavit rule").

[3] *See* Section II of Miller's Opp. (Dkt. No. 51 at 21-27) incorporated by reference as though fully set forth herein.

693 F.3d 491, 501 (5th Cir.2012); *Jacob Maxwell v. Veeck,* 110 F.3d 749, 753 (11th Cir. 1997).

Any other reading would mean that when a person is hired to create a copyrightable work that does not qualify as "work for hire" under the Act then either the hiring party has no rights; or its author has no termination right – arguably the most important authorial right in the Act.

That Section 203(a) applies to non-exclusive licenses "executed after January 1, 1978" is also no impediment. *First*, Manny's implied copyright license *is* derived from the Agreement "executed" by Miller. *Second*, even where there is no signed contract, courts *and* the Copyright Office interpret "executed" to mean carried out. *Korman v. HBC Fla., Inc.*, 182 F.3d 1291, 1293-94 (11th Cir. 1999); https://www.copyright.gov/reports/gap-grant-analysis.pdf ("[I]n the context of section 203, the plain meaning suggests that 'executed' means 'concluded transaction,' not 'signed.'"). Significantly, implied licenses are often oral, yet § 203 expressly applies to them.

Plaintiffs' claim that Miller's termination notice does not apply to his Treatment also does not hold up. The termination notices, by designating the Work as *The Long Night at Camp Blood*, and expressly stating that "[t]his Notice of Termination applies as well to … each and every prior draft or iteration of the Work", gave more than adequate notice that they applied to Miller's screenplay <u>and</u> underlying treatment incorporated therein.[4] Tob. Decl., Exs. H-J, ¶ 2 n. 2. *See* 37 C.F.R. § 201.10(e)(1) ("Harmless errors in a [termination] notice that do not materially affect the adequacy of the information … shall not render the notice invalid."); *Siegel v. Warner Bros. Entertainment Inc*., 658 F.Supp.2d 1036, 1093-94 (finding termination notice's omission of several *Superman* newspaper strips harmless error under C.F.R. § 201.10(e)(1), because the notice listed other strips and contained a similar catch-all provision); *Music Sales Corp. v.*

---

[4] Notwithstanding this, on July 5, 2017, Miller served a separate Notice of Termination regarding his Treatment out of an abundance of caution, although he was not required to do so. Tob. Reply Decl., ¶ 15, Ex. Z.

*Morris,* 73 F.Supp.2d 364, 378 (S.D.N.Y.1999); 3 William F. Patry, *Patry On Copyright* § 7:45 (2008) ("[N]otice that reasonably puts the terminated party on notice … is sufficient.")

## IV.   MBA DOES NOT TRANSFORM "SPEC" WORK INTO "WORK FOR HIRE"

There is significant record evidence that Miller wrote his Treatment and first draft screenplay "on spec" (no guaranteed compensation) prior to the Agreement. Miller Decl., ¶¶ 6-12, Exs. A, B, C, D; Miller Decl. II, ¶ 12; Cunn. Depo.146:12-148:13; 155:2 -156:15; 160:5-15; 177:16-178:13. Plaintiffs' assertion (without cites) that "Miller does not dispute" "an oral agreement" (Opp. 38) is false. Nor does the MBA help. *First*, the Agreement does not apply to the Treatment as Manny did not check its "[ ] Original Treatment" box, nor pay Miller for it *as the MBA requires.* Miller Decl., ¶ 21, Ex. D; Haye Decl., Ex. N at 198; Cunn. Depo. at 155:2 -156:15; 160:5-15. *Second*, Art. 19.B.1.(b)-B.2., Plaintiffs' sole MBA cite does not support their theory, it merely governs the deadline for Manny to submit the *signed* Agreement to the WGA, *which it also never did*.

## V.   PLAINTIFFS' CO-AUTHORSHIP CLAIM IS BARRED BY SECTION 507(b)[5]

As previously shown, Plaintiffs' demand for the dissection of Screenplay elements "created by" Miller is nothing more than time-barred co-authorship claims decades after Miller received *sole* writing credit on the Film. 17 U.S.C. § 507(b); *Merchant v. Levy*, 92 F. 51, 56 (2d Cir. 1996). Plaintiffs' erroneous claim regarding "Jason" lies outside their own complaint and they provide no evidence of the *Friday the 13th* sequels for Miller and the Court to address.

Dated: July 14, 2017              Respectfully submitted,

By:      /s/ Marc Toberoff
Marc Toberoff (FBN phv08515)
TOBEROFF & ASSOCIATES, PC

*Attorneys for Defendant and Counterclaimant Victor Miller*

---

[5] *See* Section IV of Miller's Opp. (Dkt. No. 51, at 34-40) incorporated by reference as though fully set forth herein.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing Defendant and Counterclaimant Victor Miller's Reply In Support of His Motion for Summary Judgment or, In the Alternative, Partial Summary Judgment, dated July 14, 2017, was served electronically by the Court's ECF system on said date and that all interested parties in this case are registered CM/ECF users.

The undersigned declares under penalty of perjury under the laws of the United States that the above is true and correct.

Dated: July 14, 2017                                  /s/ Marc Toberoff

                                                                    Marc Toberoff