UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| HORROR INC. and MANNY COMPANY,<br>　　　　Plaintiffs,<br><br>　　　　v.<br><br>VICTOR MILLER,<br>　　　　Defendant. | No. 3:16-cv-1442 (SRU) |

**RULING ON MOTION FOR ATTORNEYS' FEES**

　　　　In 1979, a film producer and his production company Manny Company ("Manny") hired defendant Victor Miller ("Miller") to write a screenplay for a horror film. At the time, Miller was paid just $9,282. Over time, the film, *Friday the 13th*, earned tens of millions of dollars for Manny and its successors, including Horror Inc. In 2016, Miller sought to reclaim ownership of the screenplay by using a procedure set forth in Section 203(a) of the Copyright Act. Plaintiffs Manny and Horror Inc. brought suit to keep Miller from getting his fair share. They lost at summary judgment and lost again on appeal to the United States Court of Appeals for the Second Circuit. Miller now moves for attorneys' fees pursuant to the Copyright Act, 17 U.S.C. § 505, and the California anti-SLAPP statute, Cal. Civ. Proc. Code § 425.16(e). For the following reasons, the motion is **granted in part** and **denied in part**.

**I.　　　Background**

　　　　Horror Inc. and Manny Company sued Miller, seeking a declaratory judgment Miller had written the screenplay for the film *Friday the 13th* as a work for hire, and that Miller never had authorship rights authorizing him to terminate Manny Company's copyright. *See* Summary Judgment Ruling, Doc. No. 73, published at *Horror Inc. v. Miller*, 335 F. Supp. 3d 273 (D. Conn. 2018). I granted summary judgment in favor of Miller. On September 30, 2021, the

Second Circuit affirmed the judgment. *See generally* Doc. No. 90, published at *Horror Inc. v. Miller*, 15 F.4th 232 (2d Cir. 2021). The Court presumes the parties' familiarity with the other relevant facts and procedural history of the case, set out more fully in this Court's summary judgment ruling.

II.  **Standard of Review**[1]

Under Section 505 of the Copyright Act, "[i]n any civil action under [Title 17]," a district court may "award a reasonable attorney's fee to the prevailing party," including (as here) to a prevailing party represented on a contingency basis and to a prevailing defendant. 17 U.S.C. § 505; *Blanchard v. Bergeron*, 489 U.S. 87, 93 (1989); *Kirtsaeng v. John Wiley & Sons, Inc.*, 579 U.S. 197, 202 (2016).

The movant bears the burden of demonstrating its entitlement to a fee award and the reasonableness of the award sought. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). "[N]o precise rule or formula" determines the appropriateness of awarding attorneys' fees or the amount of fees to award; rather, the Court must exercise "equitable discretion." *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 (1994); *Kirtsaeng*, 579 U.S. at 202. The Court retains discretion to award none, some, or all of the claimed fees. *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany*, 522 F.3d 182, 190 (2d Cir. 2008) ("*Arbor Hill*").

III.  **Discussion**

A. <u>Whether Miller Can Receive Section 505 Fees</u>

Neither party address two important threshold issues: whether the Court can award Copyright Act fees in light of the fact that Plaintiffs brought a copyright claim under the

---

[1] Miller also moves for attorneys' fees pursuant to the California anti-SLAPP statute, Cal. Civ. Proc. Code § 425.16(e). I address that portion of his motion later in this ruling.

Declaratory Judgment Act, 28 U.S.C. § 2201, and whether the Court may award Section 505 fees in connection with a termination rights action. I will address each issue.

First, the Declaratory Judgment Act does not contain a fee-shifting provision, and the Second Circuit has not addressed whether a defendant that defeated a declaratory judgment claim may seek fees under 17 U.S.C. § 505. *Hello I Am Elliot, Inc. v. Sine*, 2021 WL 1191971, at *7 n.5 (S.D.N.Y. Mar. 30, 2021) (observing same). At least one other circuit court has considered the question, concluding that a defendant defeating a declaratory judgment action concerning the scope of a copyright may pursue fees under Section 505. *Doc's Dream, LLC v. Dolores Press, Inc.*, 959 F.3d 357, 363 (9th Cir. 2020). The Ninth Circuit reasoned, *inter alia*, that the suit arose under the Copyright Act and that "[t]he fee-shifting provision of § 505 applies to 'any civil action under' the Copyright Act." *Id.* (quoting 17 U.S.C. § 505). That reasoning is appropriate here, too.

In this action, Plaintiffs' stated in their complaint that this action "arises under" the Declaratory Judgment Act, 28 U.S.C. § 2201, and the Copyright Act, 17 U.S.C. §§ 101 *et seq*. Compl., Doc. No. 1, at ¶ 7. More accurately, however, Plaintiffs brought their copyright claim under the Declaratory Judgment Act. *Id.* at ¶ 34 ("Horror and the Manny Company hereby request a declaration of this Court under the provisions of 28 U.S.C. § 2201, setting forth the respective rights and other legal relations of Plaintiffs and Miller."). Nevertheless, an action "arises under" the Copyright Act in the Second Circuit if "the complaint is for a remedy expressly granted by the Act" or the "complaint . . . asserts a claim requiring construction of the Act." *T.B. Harms Co. v. Eliscu*, 339 F.2d 823, 828 (2d Cir. 1964). Plaintiffs brought suit to resolve whether Miller had the right to terminate Horror's interests in and to the *Friday the 13th* screenplay, pursuant to 17 U.S.C. § 203, and to adjudicate whether Miller's termination notices

were valid.  Compl., Doc. No. 1, at ¶ 33.  Plaintiffs' suit thus implicated both prongs of the *T.B. Harms* test.

Second, courts customarily associate Section 505 fee-shifting with infringement actions. *E.g.*, *Fogerty*, 510 U.S. at 519 ("The Copyright Act of 1976, 17 U.S.C. § 505, provides in relevant part that in *any copyright infringement action* 'the court may . . . award a reasonable attorney's fee to the prevailing party as part of the costs.'") (quoting 17 U.S.C. § 505) (emphasis added).  This interpretation is supported by the caption of Section 505, "Remedies for *infringement*: Costs and attorneys' fees," which suggests that the provision may not apply where there are no allegations of infringement.  17 U.S.C. § 505 (emphasis added).  But statutory "headings and titles are not meant to take the place of the detailed provisions of the text" and cannot "limit or undo the plain meaning of the text."  *Brotherhood of R.R. Trainmen v. Balt. & Ohio R.R. Co.*, 331 U.S. 519, 528-29 (1947).  The plain language of the statute authorizes the court to award attorneys' fees "[i]n *any* civil action under this title," Title 17 of the United States Code.  17 U.S.C. § 505 (emphasis added).  *Accord Mallon v. Marshall*, 268 F. Supp. 3d 264, 265 (D. Mass. 2017) (rejecting the proposition that the statute heading limits Section 505 to infringement actions).

I have determined that this action arises under the termination rights provision of the Copyright Act, 17 U.S.C. § 203, and Title 17 of the United States Code plainly incorporates Section 203.  Thus, at risk of stating the obvious, this action arising under Section 203 is an action under Title 17.  Therefore, like others before me, I have no trouble concluding that Section 505 applies to the termination rights declaratory judgment action at bar.  *See*, *e.g.*, *Ennio Morricone Music Inc. v. Bixio Music Group Ltd.*, 2019 WL 7483871, at *3 (S.D.N.Y. Dec. 16, 2019), *report and recommendation adopted sub nom. Ennio Moricone Music Inc. v. Bixio Music*

*Group Ltd.*, 2020 WL 58235 (S.D.N.Y. Jan. 6, 2020) (reaching the merits of a termination rights fee application without questioning whether fees may be awarded in the first place); *accord Markham Concepts, Inc. v. Hasbro, Inc.*, 2021 WL 5161772 (D.R.I. Nov. 5, 2021); *Scorpio Music (Black Scorpio) S.A. v. Willis*, 2015 WL 5476116, at *5 (S.D. Cal. Sept. 15, 2015); *see also* 4 Nimmer on Copyright § 14.10[B][1][b] (2022).

Accordingly, Section 505 provides a legal basis for Miller's request for fees.

B.  Entitlement to Fees

As a threshold matter, the Court may only award a reasonable attorney's fee to a prevailing party. 17 U.S.C. § 505. A party prevails if there is a "judicially sanctioned change in the legal relationship of the parties" favoring that party, including an "enforceable judgmen[t] on the merits." *CRST Van Expedited, Inc. v. E.E.O.C.*, 578 U.S. 419, 422 (2016). The standard applies equally to a prevailing plaintiff or defendant. *Id.* Here, Miller was awarded summary judgment on the merits and judgment was affirmed on appeal. Doc. No. 73; Doc. No. 90; Doc. No. 96 (taxing costs of the appeal in favor of Miller). As the prevailing party, Miller is eligible to recover reasonable fees.

Having determined that Miller is eligible, I next decide whether to award fees. To do so, I consider several nonexclusive factors endorsed by the Supreme Court in *Fogerty*: "frivolousness, motivation, objective unreasonableness[,] and the need in particular circumstances to advance considerations of compensation and deterrence," in light of the objectives of the Copyright Act to promote public access to creative works. *Kirtsaeng v. John Wiley & Sons, Inc.*, 579 U.S. 197, 202-04 (2016) (quoting *Fogerty*, 510 U.S. at 534 n.19). Here, the factors favor a fee award.

1.  *Plaintiffs' Claims Were Objectively Unreasonable But Not Frivolous*

Plaintiffs argue that this case raises a "'novel and unsettled question of copyright law'" for which "an award of attorney's fees on the basis of purported unreasonableness is not warranted." Opp'n, Doc. No. 94, at 14 (quoting *Lotus Dev. Corp. v. Borland Int'l, Inc.*, 140 F.3d 70, 72 (1st Cir. 1998) (cited with approval by *Matthew Bender & Co. v. W. Pub. Co.*, 240 F.3d 116, 122 (2d Cir. 2001))). I disagree. For the reasons set forth in this Court's summary judgment order and in the Second Circuit's ruling on appeal, Plaintiffs' claims were lacking "legal and factual support" and were therefore "objectively unreasonable." *Viva Video, Inc. v. Cabrera*, 9 F. App'x 77, 80 (2d Cir. 2001). I arrive at this conclusion because Plaintiffs' theory was contrary to well-settled precedent, which Plaintiffs appeared to try to circumvent rather than to try to challenge, and not because Plaintiffs lost at summary judgment and on appeal. *See* Doc. No. 73 at 21, 40 (citing *Community for Creative Non-Violence v. Reid*, 490 U.S. 730 (1989)); Doc. No. 90 at 20 (same); *Williams v. Crichton*, 891 F. Supp. 120, 122 (S.D.N.Y. 1994) (the "same finding" supporting granting summary judgment to the prevailing defendant also "support[ed] the Court['s] determination . . . that [the plaintiff's] claim was 'objectively unreasonable'"). On that basis, I cannot conclude that this case presented a question so "novel and unsettled" that attorneys' fees are unwarranted. That Plaintiffs' claims were objectively unreasonable substantially weighs in favor of a fee award. *See Kirtsaeng*, 579 U.S. at 207, 209.

However, Plaintiffs' claims fall short of being frivolous. A complaint is frivolous "where it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Although I disagree that Plaintiffs had "substantial legal justification," doc. no. 91 at 17, the "nonexhaustive" nature of the *Reid* factors suggest that there was at least an arguable basis in law for Plaintiffs' claim. 490 U.S. at 752.

Accordingly, I conclude that the first factor weighs in favor of granting fees.

2. *Plaintiffs' Motivation Favors Miller*

"[T]he presence of improper motivation in bringing a lawsuit or other bad faith conduct weighs heavily in favor of an award of costs and fees" under Section 505. *Baker v. Urban Outfitters, Inc.*, 431 F. Supp. 2d 351, 357 (S.D.N.Y. 2006) (citing *Matthew Bender*, 240 F.3d at 124-25). The filing of the lawsuit, a party's conduct during the litigation, or both may demonstrate improper motive.

Miller asserts that Plaintiffs had a "retaliatory" motivation, doc. no. 91 at 30, and filed suit to "'extract[] a grossly unfair penalty'" against Miller for exercising his termination rights, *id.* at 31 (quoting *Mailer v. RKO Teleradio Pictures, Inc.*, 332 F.2d 747, 749 (2d Cir. 1964)). Plaintiffs counter that they properly brought a declaratory judgment action to adjudicate "which of [Miller's termination] notices would be effective and when" and to, in effect, quiet title. Doc. No. 94, at 20, 26 (citing *Ray Charles Found. v. Robinson*, 795 F.3d 1109, 1117 (9th Cir. 2015)).

In my view, Plaintiffs' complaint undermines their assertion that they merely sought clarification. Plaintiffs brought state law claims for breach of contract, slander of title, and violation of the Connecticut Unfair Trade Practices Act ("CUTPA"). *See* Compl., Doc. No. 1, ¶¶ 35-54. The breach of contract claim is perhaps a companion to the declaratory judgment claim, but the Plaintiffs' causes of action for slander of title and under CUTPA were not. Rather, Plaintiffs alleged Miller engaged in tortious conduct. On that basis, I perceive that Plaintiffs brought suit to intimidate Miller from exercising his termination rights and find improper motive in connection with filing the lawsuit.[2]

Accordingly, I conclude that the second factor favors awarding fees.

---

[2] Having found improper motive, I decline to reach the parties' dueling claims regarding bad faith conduct during the course of the litigation. Doc. No. 91, at 32; Doc. No. 94, at 26.

7

3. *Considerations of Compensation and Deterrence*

The Court may evaluate considerations of compensation and deterrence, so long as the factors are "faithful to the purposes of the Copyright Act." *Fogerty*, 510 U.S. at 534 n.19. The primary purpose of Copyright Act "is to encourage the origination of creative works by attaching enforceable property rights to them." *Matthew Bender*, 240 F.3d at 122. By establishing termination rights, Congress "enacted the termination provision to safeguard 'authors against unremunerative transfers'" of copyright made before their works were commercially exploited, and to give authors and their families a second chance to obtain a more equitable portion of the copyright's value when it is no longer conjectural. *Waite v. UMG Recordings, Inc.*, 450 F. Supp. 3d 430, 438 (S.D.N.Y. 2020) (quoting H.R. Rep. No. 94-1476, at 124 (Sept. 3, 1976)); *see also N.Y. Times v. Tasini*, 533 U.S. 483, 496 n.3 (2001) (recognizing Congress's intent to reform "the author/publisher balance" by providing an "inalienable authorial right to revoke a copyright transfer" through Section 203). Specifically, Congress sought to "provide added benefits to authors" by "mak[ing] the rewards for the creativity of authors more substantial" and "reliev[ing] authors of the consequences of ill-advised and unremunerative grants that had been made before the author had a fair opportunity to appreciate the true value of his work product." *Mills Music, Inc. v. Snyder*, 469 U.S. 153, 172-73 (1985).

Here, Miller's successful defense of his termination right is consistent with Congress's purpose in effecting termination rights, and a fee award will serve to compensate him in a manner consistent with the Act. In addition, I note that a fee award may deter "similarly situated plaintiffs from bringing unreasonable claims" against authors who likewise assert their termination rights. *See Baker*, 431 F. Supp. 2d at 359.

Accordingly, I conclude that the third factor weighs in favor of granting fees.

Taken together, all three factors favor exercising this Court's equitable discretion to award attorneys' fees to Miller. The issue, then, is how much to award.

C. Calculation of Fees

To determine the magnitude of fees to award, the Court first determines the presumptively reasonable fee ("the "lodestar"), which is calculated by multiplying a reasonable hourly rate for each attorney by the reasonable number of hours the attorney expended on the case. *Arbor Hill*, 522 F.3d at 190. I treat this as a three-step inquiry: (1) determining the reasonable hourly rate for each attorney; (2) determining the number of hours reasonably expended; and (3) calculating, then adjusting, the lodestar amount.

1. *Reasonable Hourly Rates*

In step one, the Court sets a "reasonable hourly rate" for each attorney, which is the amount that "a reasonable, paying client would be willing to pay" based on "the case-specific variables" courts deem relevant to the reasonableness of fees. *Arbor Hill*, 522 F.3d at 184. Specifically, the Court may consider the following "*Johnson*" factors:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorneys' customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesireability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id.* at 186 n.3 (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)). Although there is a rebuttable presumption that the reasonable hourly rate is one based on prevailing fees in the district where the case was litigated, *id.* at 191, Miller seeks Southern

9

District of New York rates. Plaintiffs do not appear to contest the issue of the community in which to evaluate the prevailing rates, and I conclude that Southern District of New York rates are reasonable in this case.[3] Therefore, I principally focus the reasonableness of the attorneys' hourly rates in connection with their experience and the nature of the case.

Miller proposes fee awards for each of his attorneys Marc Toberoff, Ian Samuel, Douglas Fretty, Michael Siravo, and Timothy Lamoureux at the rates discussed below. In support, he submits declarations from counsel and biographical information about counsel, clippings from newspapers and magazine articles written about counsel, and an excerpt of the American

---

[3]     "In considering the reasonableness of the hourly rates, the Court considers the prevailing hourly rates in the forum district as presumptively reasonable, but need not adhere to them." *Bank of Am., N.A. v. Malkin*, 2018 WL 624636, at *3–4 (D. Conn. Jan. 30, 2018) (citations omitted); *see also Arbor Hill*, 522 F.3d at 191. "[W]hen faced with a request for an award of higher out-of-district rates, a district court must first apply a presumption in favor of application of the forum rule." *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 175 (2d Cir. 2009)). "[T]o overcome that presumption, a litigant must persuasively establish that a reasonable client would have selected out-of-district counsel because doing so would likely (not just possibly) produce a substantially better net result." *Id.* The movant must make a "particularized showing" that the selection of counsel was based on objective factors *and* that in-district counsel would produce a substantially inferior result. *Id.* at 176; *see also Tsombanidis v. City of West Haven*, 208 F.Supp.2d 263, 277 (D. Conn. 2002).

Miller argues that this Court should look to fee awards from the Southern District of New York as comparators, because Miller's counsel is a member of that Bar, "the vast majority" of copyright litigation in this Circuit is conducted that District, and "most" clients litigating complex copyright matters hire counsel from that District. Doc. No. 91, at 49. Plaintiffs broadly assert that the movant's rates are unreasonable, but they do not specifically dispute Miller's use of out-of-forum rates. Doc. No. 94, at 19-20. Thus, I deem the issue waived by the Plaintiffs.

I conclude that Miller has sufficiently rebutted the forum district presumption by demonstrating that "a reasonable, paying client would have retained out-of-district counsel." *Arbor Hill*, 522 F.3d at 184 n.2; *Smart SMR of N.Y. v. Zoning Comm'n*, 9 F. Supp. 2d 143, 149 (D. Conn. 1998). Supplementing the reasons set forth in Miller's motion, I consider that Miller's counsel has experience litigating termination rights cases, a rare copyright subspecialty; that counsel has successfully litigated such cases before; and that Miller's favorable outcome reflects the quality of his counsel's performance, suggesting that out-of-district counsel was likely to produce a substantially better result. *See Restivo v. Hessemann*, 846 F.3d 547, 591 (2d Cir. 2017). My conclusion is buttressed by the observation that Plaintiffs initiated this litigation and retained out-of-district counsel to prosecute it: Ferdinand IP, LLC of New York and Greenberg Glusker Fields Claman Machtinger & Kinsella LLP of Los Angeles before this court, and Kathleen Sullivan of Quinn Emanuel Urquhart & Sullivan on appeal. Plaintiffs themselves demonstrate that a paying client would be willing to pay out-of-district rates, presumably because litigating this matter entailed specialized knowledge of a niche area of copyright law. Although the party bearing the cost of attorneys' fees "should not be required to pay for a limousine when a sedan could have done the job," Plaintiffs' own choices seem to reflect that they too believed that a limousine was appropriate in this matter. *Simmons*, 575 F.3d at 177; *see also Alderman v. Pan Am World Airways*, 169 F.3d 99, 102 (2d Cir. 1999) ("[a]ttorney's fees must be reasonable in terms of the circumstances of the particular case"). Miller decided to fight Los Angeles and New York lawyers with comparable Los Angeles lawyers, charging New York fees. That decision appears reasonable in the circumstances.

Accordingly, I will assess the proposed Southern District of New York rates.

Intellectual Property Law Association Report of the Economic Survey 2021 ("AIPLA Report"). Docs. No. 91-1 (Toberoff Decl.); Docs. No. 91-3, 91-4, and 91-5 (articles discussing Attorney Toberoff); Doc. No. 91-5 (Lamoureux Biography); Doc. No. 91-6 (Fretty Decl.); Doc. No. 91-8 (Samuel Biography); Doc. No. 91-11 (excerpt of AIPLA Report); Docs. No. 91-12 (Siravo Decl.) and 91-13 (Siravo Biography). I consider these submissions, in addition to Plaintiffs' unsupported assertion that the rates sought are not reasonable. Doc. No. 94, at 24.[4]

    a. Partner Marc Toberoff

Miller first seeks compensation for his lead counsel, Attorney Marc Toberoff. Doc. No. 91 at 46. Toberoff graduated from Columbia Law School in 1980, and thus appears to have forty-two years of legal experience; has practiced in New York and California; and has specialized in copyright litigation for twenty years. *Id.* (citing Toberoff Decl., Doc. No. 91-1, at 2 ¶ 2). He is the partner and principal of the intellectual property law firm Toberoff & Associates, and he has substantiated particular expertise in the fields of copyright generally and termination rights in particular. *Id.*; *see also* Docs. No. 91-3, 91-4, 91-5.

Miller proposes an hourly rate for Toberoff of $795 per hour. Doc. No. 91 at 46. In the Southern District of New York, partners litigating copyright law cases charge between $400 to $750 per hour, depending on their legal experience in general and experience in copyright law in particular. *Capitol Records, LLC v. ReDigi Inc.*, 2022 WL 3348385, at *2 (S.D.N.Y. Aug. 12, 2022) (citing *Latin Am. Music Co., Inc. v. Spanish Broad. Sys., Inc.*, 2020 WL 2848232, at *5 (S.D.N.Y. June 1, 2020) (collecting cases)). However, the Southern District has awarded

---

[4] Plaintiffs contest awarding any fees and, should fees be awarded, challenge the amount of hours expended on this litigation. Regarding rates, Plaintiffs' only contribution is as follows: "Even assuming that Miller's attorneys' fees request is reasonable (which it is not), the amount of time Miller's counsel claims to have spent on this matter (1,855.45 hours) and amount of fees Miller seeks ($1,182,086.50), are patently unreasonable given the limited scope of this action." Opp'n, Doc. No. 94, at 24. Plaintiffs, in effect, have chosen to waive any claim that the hourly rates sought are not reasonable.

11

partners with extensive experience practicing intellectual property law rates comparable to those requested for Toberoff. For example, in *Sub-Zero, Inc. v. Sub Zero NY Refrigeration & Appliances Services, Inc.*, the court authorized $785 per hour for a "senior partner" in a copyright and intellectual property practice group with thirty-eight years' experience. 2014 WL 1303434, at *8–9 (S.D.N.Y. Apr. 1, 2014). Toberoff observes that the AIPLA Report demonstrates that two highest quartiles of partners' billing rates in the New York consolidated metropolitan statistical area are $980 to $1,150 per hour and argues that his rate is reasonable because he seeks a lower hourly rate. *See* Doc. No. 91-11, at 4.

I conclude that the proposed fees for Toberoff of $795 per hour are reasonable for an attorney with his experience and expertise.

### b. Senior Associate Ian Samuel

Miller next seeks compensation for the fees incurred by Ian Samuel, a senior associate at Toberoff & Associates, for Miller's appeal. Doc. No. 91, at 46. Attorney Samuel graduated from New York University School of Law in 2008, then clerked for United States Court of Appeals for the Ninth Circuit Court and the United States Supreme Court before becoming a law professor and an appellate litigator. *Id.* at 48 n.6. He seems to have roughly fourteen years of legal experience, if not necessarily fourteen years of legal practice.

Miller proposes an hourly rate for Samuel of $585. *Id.* at 46. This fee appears to be high, even for the Southern District of New York. *See, e.g.*, *Capitol Records,* 2022 WL 3348385 (awarding counsel with thirteen years' experience a rate of $435 per hour for his work on a copyright appeal); *Sid Bernstein Presents, LLC v. Apple Corps Ltd.*, 2018 WL 1587125, at *5 (S.D.N.Y. Mar. 29, 2018) (awarding a maximum of $405 per hour as a senior associate's rate in a copyright action). However, Samuel's fee is not unreasonable in light of increasing rates for

attorneys generally and for those with elite credentials in particular, and in light of his role working on the appeal in this matter. *See Ladd v. Thomas*, 47 F. Supp. 2d 236, 239 (D. Conn. 1999) (providing that the court has discretion to award fees at prevailing, rather than historical, rates); *Beastie Boys v. Monster Energy Co.*, 112 F. Supp. 3d 31, 56 (S.D.N.Y. 2015) (observing that a rate of $505 per hour is "higher than those [rates] typically approved for associates in [S.D.N.Y.]" but concluding that the rate was reasonable for a fourth-year associate where the movant had demonstrated that hourly rates for associates were as high as $678 per hour in New York city, and the associates' work was "for the most part, relatively demanding and complex" and "high quality"). Given the nature of Samuel's work in this case, the rate sought does not appear to be inappropriately high.

I conclude that the proposed fees for Samuel of $585 per hour are reasonable for an attorney with his experience and expertise, in light of his work on this case.

c. Associates Douglas Fretty, Timothy Lamoureux, and Michael Siravo

Miller also seeks compensation for work done by Douglas Fretty, Timothy Lamoureux, and Michael Siravo, associates at Toberoff & Associates. Fretty has been a litigator since 2012, after graduating from UCLA School of Law in 2011. *Id*. at 48 n.6. Lamoureux has practiced intellectual property law since 2015, after graduating from Harvard Law School in 2013. *Id.* Siravo appears to have been a litigator for three years, after graduating from University of Pennsylvania Law School in 2016 and clerking for the New Jersey Superior Court. *Id.*

Miller proposes an hourly rate for Fretty of $475 per hour, an hourly rate for Siravo of $475 per hour, and an hourly rate for Lamoureux of $350 per hour. For copyright cases, the Southern District of New York has awarded "hourly rates averaging $461 to $505 for second, third, and fourth-year associates." *Beastie Boys*, 112 F. Supp. 3d at 57; *see also Latin Am. Music*

13

*Co.*, 2020 WL 2848232 (capping the hourly rate awarded to associates in a copyright action at $465 per hour); *see also Capitol Records*, 2022 WL 3348385, at *3 (collecting cases). Beyond the copyright context, and depending on the associate's experience, the Southern District of New York has approved of rates "in the range of $200 to $450 per hour." *Genger v. Genger*, 2015 WL 1011718, at *2 (S.D.N.Y. Mar. 9, 2015). These associates' comparable experience merits comparable fees.

I conclude the proposed rates of $475 and $350 for Fretty, Lamoureux, and Siravo's services are reasonable in light of their experience.

2. *Number of Hours Reasonably Expended*

In step two, the Court determines the number of hours each attorney reasonably expended. *See Arbor Hill*, 522 F.3d at 189–90. The Court must consider "contemporaneous time records indicating, for each attorney, the date, the hours expended, and the nature of the work done." *New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983); *see also Scott v. City of New York*, 626 F.3d 130, 133 (2d Cir. 2010) (holding that "absent unusual circumstances attorneys are required to submit contemporaneous records with their fee applications"). In determining the amount of hours reasonably expended, the Court must "examine the hours expended by counsel and the value of the work product of the particular expenditures to the client's case." *Gierlinger v. Gleason*, 160 F.3d 858, 876 (2d Cir. 1998) (citation omitted). The Court may adjust the number of hours to account for items that are "excessive, redundant, or otherwise unnecessary" or for "vagueness, inconsistencies, and other deficiencies in the billing records." *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 172-73 (2d Cir. 1998). In the alternative, the Court may deduct a reasonable percentage of the number of hours claimed to account for such deficiencies. *Id.*

The Court has reviewed contemporaneous time records, in which Miller's counsel identifies expending 1,855.45 hours on this proceeding. Specifically, with Miller's original motion for attorneys' fees, doc. no. 81, the parties submitted a Joint Statement listing the date, description, number of hours requested by Miller, number of hours Plaintiffs believe should be awarded, and the parties' positions regarding any disputed entry, *see* doc. no. 81-6. Miller has re-submitted those records with this motion, doc. no. 91-9, and included an additional exhibit documenting time spent on this case after the Court's summary judgment ruling and including the appeal, doc. no. 91-10. In all, Miller's updated motion, including the costs of the appeal, itemizes 1,855.45 hours expended on this case.

After principally arguing that no fees should be awarded, Plaintiffs assert that the fees sought are excessive in light of their characterizations that "the matter was limited in scope, involved limited discovery, no significant motion practice (other than Miller's improper motion to strike), was determined on summary judgment, and the parties never reached the trial preparation phase," and that Miller requests fees for duplicative tasks and/or procedurally improper briefing. Doc. No. 94, at 11-12. Plaintiffs dispute all but just 46.75 hours of Miller's counsel's time. *Id.* at 15, 24, 26, 30, 32-33, 52, 56-57, 64-65, 100. In my view, their objections are unhelpful, largely unpersuasive, and even obstructive.

The "most critical factor" in determining reasonable attorney's fees the prevailing party's "degree of success obtained." *Farrar v. Hobby*, 506 U.S. 103, 114 (1992) (quoting *Hensley*, 461 U.S. at 436). In this case, Miller's counsel prevailed in the trial court and on appeal, preserving Miller's termination right without necessitating significant motion practice or a trial. Swift resolution is a benefit to the Court and to the parties, not necessarily a basis on which to deny fees. Further, I dismiss Plaintiffs' blanket objection that Miller requests fees for duplicative

15

tasks; Miller at most used two timekeepers at a time, and it is not necessarily inappropriate to do so. *See Ass'n for Retarded Children*, 711 F.2d at 1146 ("prevailing parties are not barred as a matter of law from receiving fees for sending a second attorney to depositions or an extra lawyer into court to observe and assist"); *Beastie Boys*, 112 F. Supp. 3d at 55 ("no rule require[es] that only one attorney participate in each litigation event"); *Pappas v. Watson Wyatt & Co.*, 2008 WL 45385, at *6 (D. Conn. Jan. 2, 2008). I also largely dismiss Plaintiffs' blanket block billing objection. Block billing is not a basis to reduce fees where, as here, entries are "not vague" and the "Court can discern whether the time was reasonably expended." *CSL Silicones, Inc. v. Midsun Group Inc.*, 2017 WL 1399630, at *7 (D. Conn. Apr. 18, 2017); *see also Restivo*, 846 F.3d at 591.

However, I have some concerns for which a fee reduction is appropriate. For example, there are instances in which billing appears excessive. *See*, *e.g.*, Doc. No. 91-9 at 5-6 (billing 1.25 hours of Toberoff's time to draft and review an extension request), at 73 (billing another 4.5 hours of Lamoureux's time to draft that same extension request), at 75 (billing another roughly 3 hours of Lamoureux's time to revise that extension request); *see also id*. at 52 (billing 16.75 hours of Toberoff's time to prepare for the hearing on the motion for summary judgment). In other instances, Toberoff appears to have worked on tasks that may have been appropriately done by, or at least done in larger part by, an associate. *E.g.*, *id.* at 23-24 (billing over 5.5 hours of Toberoff's time for drafting the form 26(f) report); *see also Beastie Boys*, 112 F. Supp. 3d at 53 (listing cases holding that a high ratio of partner to associate hours merits reducing a fee award). I also identify a few instances in which counsel billed at a full rate for tasks that are not customarily billed at a full rate in this Circuit, and others in which tasks that may not be billed in full were indistinguishably comingled with tasks that may be billed in full. *Compare Patsy's*

*Brand, Inc. v. I.O.B. Realty, Inc.*, 2022 WL 1026577, at *4 (S.D.N.Y. Apr. 6, 2022) ("The practice of courts in this Circuit is to approve compensation for travel time at half of a timekeeper's ordinary hourly rate.  Failing to distinguish time spent on travel (which may be compensated at half-rate) from time spent on substantive work (which may be compensated at full-rate) impairs the Court's ability to assess the reasonableness of the hours billed.") (citation omitted) *with* Doc. No. 91-9 at 53-54 (billing 8.75 hours for travel to the hearing on the motion for summary judgment and an indeterminate number of hours for travel from the hearing).

In addition, I am sympathetic to Plaintiffs' objection to being billed for Miller's motion to strike the complaint pursuant to California's Anti-Strategic Lawsuits Against Public Participation ("SLAPP") statute, Cal. Civ. Proc. Code § 425.16(b)(1), (c)(1).  In this case, I stayed the state law claims pending resolution of the declaratory judgment, then ultimately dismissed the state law claims without prejudice.  *See* Doc. No. 73, at 62.  As a result, Miller's anti-SLAPP motion was never adjudicated.  Consequently, Miller is not *per se* entitled to recover attorneys' fees under the California anti-SLAPP law, because he did not prevail on the special motion to strike.  *See* Cal. Civ. Pro. Code § 425.16(c)(1) (providing that attorneys' fees are only awarded to "a prevailing defendant on a special motion to strike").

Miller requests that I either amend my ruling on summary judgment and the judgment entered to accommodate refiling and granting the anti-SLAPP motion, or that I consider whether to award the fees in connection with the anti-SLAPP motion in connection with Miller's fee award under Section 505.  I decline to amend the judgment, and I address the anti-SLAPP motion in connection with the fee award.

"It is a basic rule of attorney's fees awards that an award should not be granted for attorney time devoted to unsuccessful claims or arguments, because 'the most critical factor is

the degree of success obtained,' although '[t]here is no precise rule or formula for making these determinations.'" *McCullough v. World Wrestling Entm't, Inc.,* 2021 WL 4472719, at *5 (D. Conn. Sept. 30, 2021) (quoting *Hensley*, 461 U.S. at 436). The Second Circuit has advised that the court should "exclude . . . hours dedicated to severable unsuccessful claims." *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999); *see also Home Funding Grp., LLC v. Kochmann*, 2008 WL 4298325, at *5 (D. Conn. Sept. 18, 2008) (holding that a party is not necessarily entitled to a fee award for "unsuccessful claims that were based on different facts and different legal theories"). Thus, Miller is not necessarily entitled to recover fees for the unadjudicated and thereby unsuccessful anti-SLAPP motion under Section 505.

Exercising my discretion, I decline to award fees for the anti-SLAPP motion. "While a party to a litigation may choose its own level of litigation expense, it may not impose its own approach on a losing adversary," and I am not persuaded that it is appropriate for Miller to impose fees on his adversaries for the motion. *Queenie, Ltd. v. Nygard International,* 204 F. Supp. 2d 601, 608 (S.D.N.Y. 2002). I am especially reticent to award fees in light of the fact that I agree with the Second Circuit's reasoning in its subsequent determination that the California anti-SLAPP statute is inapplicable in federal court, and I would have come to the same conclusion had I ruled on the anti-SLAPP motion in the first place. *La Liberte v. Reid*, 966 F.3d 79, 83 (2d Cir. 2020). Thus, the fact that Miller's counsel expended 296.75 hours on the anti-SLAPP motion, or about 15% of the total hours expended on this case, warrants a fee reduction.

  3.  *Lodestar Calculation and Adjustments*

In step three, the Court multiplies the reasonable hourly rate by the number of hours reasonably expended to determine the "presumptively reasonable fee." *Arbor Hill*, 522 F.3d at 183. However, in light of the deficiencies identified in the previous section, the Court will

exercise its discretion to "deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat." *Kirsch*, 148 F.3d at 17 (citation marks omitted).  Specifically, to account for the movant's excessive billing with respect to time charged for tasks, the share of work completed by partners, and tasks that should not be billed in this Circuit, in addition to the anti-SLAPP motion for which I decline to award fees, I reduce the overall award by 25%.

As a result, the Court's fee award calculation is as follows:

| Timekeeper | Title | Billing Rate | Hours Worked | Reduced Hours | Reduced Fees |
|---|---|---|---|---|---|
| Toberoff, Marc | Principal | $795/hour | 1,016.75 | 762.56 | $606,237.19 |
| Samuel, Ian | Senior Associate | $585/hour | 250.4 | 187.80 | $109,863.00 |
| Fretty, Douglas | Associate | $475/hour | 140.45 | 105.34 | $50,035.31 |
| Siravo, Michael | Associate | $475/hour | 30.6 | 22.95 | $10,901.25 |
| Lamoureux, Timothy | Associate | $350/hour | 417.25 | 312.94 | $109,528.13 |
| | | | | **Total Fees Awarded** | **$886,564.88** |

## IV.   Conclusion

Accordingly, it is hereby ordered that Miller's motion for attorneys' fees is granted in part and denied in part.  Miller is awarded **$886,564.88** in attorneys' fees for litigation before the district court and on appeal to the United States Court of Appeals for the Second Circuit.

So ordered.

Dated at Bridgeport, Connecticut, this 26th day of September 2022.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge